THE PEOPLE on the relation of BABCOCK and others *against* THE COMMISSIONERS OF HIGHWAYS OF CHERRY VALLEY.

Upon an appeal from a determination of commissioners of highways refusing to lay out a highway, the referees have all the powers and are charged with all the duties formerly possessed by the three judges of the court of common pleas under the provisions of the revised statutes.

On reversing the determination of the commissioners, they should make such order in relation to the laying out the highway as in their judgment the commissioners should have made.

Where they simply reverse an order refusing to lay out a highway without giving further directions, the commissioners are not bound to lay out the highway, and a mandamus will not be granted to compel them to proceed and do it.

This was a writ of error to the supreme court, brought upon a judgment awarding a peremptory mandamus, commanding the defendants to lay out and open a road in the town of Cherry Valley. The facts disclosed in the case which related to the questions here decided, were as follows:

On the twenty-sixth of March, 1850, an alternative man-

damus was issued, directed to the defendants, reciting that on the twenty-sixth of June, 1848, an application had in proper form been made to the commissioners of highways of Cherry Valley, to lay out and open a road, the courses and termini of which were set out: that the commissioners met and determined not to lay it out: that an appeal from their determination was made to the county judge of Otsego county, who appointed three referees to determine the appeal: that the referees after having given the requisite notice, met on the twenty-eighth of September, 1848, and after hearing the proofs and allegations of the parties, reversed the determination of the commissioners: that the relator had after the decision of the referees, requested the commissioners to lay out and open the highway, and to cause the damages thereon to be assessed according to law, and that they neglected and refused so to do. The writ commanded them, therefore, to lay out and open the highway, or to show cause, &c. The defendants made a return to the alternative mandamus, setting out the proceedings recited in the writ relative to the application for the highway, and their action and that of the referees thereupon, and for cause for not complying with the request of the relators, alleging that the judgment of the referees upon the appeal was simply " that the determination of the said commissioners of highways be and the same is hereby reversed;" and insisting that the said referees had not made any determination, either laying out the road or ordering that a road should be laid out, to the knowledge or belief of the defendants: that the commissioners had no power or authority, by the laws or statutes of this state, to lay out the said road, an appeal having been brought from the determination of the commissioners then in office, refusing to lay out the same: that they did not deem the road either necessary or proper, expedient or useful; but on the contrary unnecessary and improper, inexpedient and useless, and therefore they insisted and submitted to the court that they had no power or authority to lay it out, and that the

lapse of so great a time since the decision of the appeal
before the bringing of the mandamus was a sufficient reason
for not proceeding upon the relators' request to lay out the
highway. For these and other reasons contained in the
return, they submitted that they ought not to lay out and
open the highway. The relators demurred to the return,
assigning among the grounds of demurrer the following:

"2d. That the referees were not required by law to
make any determination, laying out said road, or ordering
that said road should be laid out: that the determination
and order made by said referees as set forth in said return
reversing the determination of the commissioners in refus-
ing and denying the application for said road, was and is
a legal order, and all that by law the said referees were
required to do.

"3d. That after the final determination of said appeal,
by said referees as set forth in said return, the said com-
missioners of highways were in duty bound to proceed and
lay out said road in the same manner as if the decision of
said commissioners had been in favor thereof and there
had been no appeal.

"4th. That after the determination and decision of said
referees upon said appeal, the commissioners of highways
of said town had no discretion in the matter, and whether
they deemed the said road necessary or proper, expedient
or useful, or not, they were in duty bound to proceed and
lay out said road.

"5th. That the decision and order of the referees, re-
versing the order of the commissioners refusing the appli-
cation for said road, was and is a legal determination and
adjudication in favor of the application for said road, and
the said commissioners of highways were thereby author-
ized and required to proceed and lay out said road.

"8th. That the length of time which has intervened since
the determination of said appeal by the said referees, forms
no legal excuse for the further neglect of said commission-

ers in the performance of a plain duty resting upon them, and can not be urged by said commissioners as evidence of an abandonment of said application for said road."

The argument of the demurrer took place at a general term sitting in the sixth district in September, 1851, when the demurrer was sustained, and a peremptory writ awarded. The defendants brought a writ of error.

*J. E. Dewey*, for plaintiffs in error.

*A. Dean*, for defendants in error.

WILLARD, J. — The only question I shall discuss in this case, is whether the referees made such a decision as required the commissioners of highways of Cherry Valley, *to lay out and open the road* in question, as required by the judgment awarding the peremptory mandamus.

To determine this question it is necessary to understand the legislative requirements on this subject prior to the act of 1847. Under the revised statutes, (1 *R. S.* 518, § 84,) any person conceiving himself aggrieved by any determination the commissioners of highways, either in laying out, altering or discontinuing, or in refusing to lay out, alter or discontinue any road, might within sixty days thereafter appeal to any three of the judges of the court of common pleas of the county in which the road was situated. As the present appeal was from a determination of the commissioners, *refusing* to lay out the road, no more of the statute will be recited than relates to that contingency. The statute points out the mode of conducting the appeal before the judges, the notices to be given, and the duty of the judges to convene and hear the proofs and allegations of the parties, and it then proceeds in the 19th section, (1 *R. S.* 519,) and enacts that where an appeal shall have been made from a determination of commissioners refusing to lay out a road, and the judges shall reverse such determination. " such judges shall lay out the road applied for:

and in doing so, shall proceed in the same manner in which commissioners of highways are directed to proceed in like cases. Such road shall be opened by the commissioners of the town, in the same manner as if laid out by themselves." Under this provision, the mere reversal of the determination of the commissioners refusing to lay out a road, left the matter exactly as it was before the road was applied for, and did not require or even authorize the commissioners to open the road. The relators insist, that the law in this respect has been changed, and that on a mere reversal in such case, the commissioners are bound to lay out the road. A brief reference to the acts of 1845 and 1847 will show they are mistaken in that construction of the act.

The principal object of the law of 1845, (*Laws of* 1845, *p.* 183,) was to reduce the expenses of towns and counties. With this view the 9th section allowed an appeal from the determination of commissioners of highways in refusing to lay out, alter or discontinue any road, to be taken in the first instance to the first judge of the county courts, and when he was disqualified or the office was vacant, to any other county judge of the county. This appeal was to be brought and conducted in all respects as appeals were brought and conducted under the revised statutes. By the 10th section it was provided that any party considering himself aggrieved by any decision upon such appeal, might at any time within forty days thereafter, file a notice in the office of the clerk of the town where the commissioners resided, signifying his intention to appeal to two other judges of the said county, to be associated with the person who made this decision on the first appeal. After pointing out the mode of conducting the appeal, the 13th section enacts that whenever there shall have been any final determination upon any appeal or appeals provided for as aforesaid, *making it necessary that any road or highway shall be laid out, altered, opened or discontinued*, it shall be the duty of the commissioners to carry out such deter-

mination, the same as if the decision of such commissioners had been in favor thereof, and there had been no appeal. The decision of the judges was by the 12th section required to be in writing, and filed in the town clerk's office of the town.

It is quite plain that a decision of the judges merely reversing the order of the commissioners refusing to lay out a road, does not make it necessary that the road shall be laid out as applied for to the commissioners. If the judges intended the road should be laid out, they should not only reverse the order refusing to lay it out, but direct it to be laid out and opened by the commissioners. The act of 1845, like many other reforming statutes, neither diminished expense, or facilitated business, and it was doomed to a transitory existence.

The adoption of the constitution of 1846, abolishing the court of common pleas, rendered a revision of so much of the highway laws as relate to appeals expedient. This was done by the act of December 14, 1847. (*Laws of* 1847, *p.* 580.) The eighth section of this act is apparently framed from the 84th section of the 1 *R. S.* 518, and merely substitutes the county judge for the three judges of the court of common pleas of the county, as the person to whom the appeal shall be addressed. It requires the county judge on receiving the appeal to appoint three disinterested freeholders of the county, but belonging to another town, to hear and determine such appeal. Upon receiving notice of their appointment, the referees possess all the powers and are required to discharge all the duties heretofore possessed and discharged by the three judges. The reference here is undoubtedly to the power of the three judges under the revised statutes. The 9th section enacts that whenever the referees shall make any decision laying out, altering or discontinuing any road *in whole or in part*, it shall be the duty of the commissioners of highways of the town to carry out such decision in the same manner as required in cases of final determinations of

Sel. IV.—61

appeals, as provided by the thirteenth section of the act of 1845, and such decision shall remain unaltered for the term of four years from the time the same shall have been filed in the office of the town clerk. This section applies to every case whether the referees differ *wholly*, or only in *part*, from the commissioners. Formerly the judges in appeal could only affirm or reverse in *toto*. (*Com. of Highways* v. *The Judges of Chenango*, 25 *Wendell*, 453.)

The 9th section was intended to extend the power of the referees on appeal to a partial reversal or modification of the order of the commissioners. In the present case there was a total *reversal* of the order of the commissioners. But the determination of the referees was incomplete, if they intended the road should be laid out according to the prayer of the petitioners. Whether their duty is to be measured by that of the judges of the common pleas under the revised statutes, or under the 13th section of the act of 1845, they were required, on reversing the decision of the commissioners in refusing to lay out a road, to lay out the road as prayed for in the petition, or if they reversed only in part, to describe by courses and distances the road which they direct the commissioners to lay out and open. Their decision is to be made in writing, and filed in the town clerk's office, whether they lay out the road *in whole or in part*, as prayed for. (*Laws of* 1847, *p.* 584, § 9.) It was probably the duty of the referees in reversing *in whole* the determination of the commissioners in refusing to lay out the road, to make such order as the commissioners should in their judgment, have made: that is, in this case, an order to lay out the road according to the prayer of the petitioner. In omitting to make such order, and merely reversing the order of refusal, their determination was incomplete. The commissioners of highways were not bound to lay out the road, upon the mere reversal of their order of refusal.

There are several other questions in this case, but it is unnecessary to consider them, as this is decisive of the action.

The judgment of the supreme court should be reversed, with costs of this court and of the court below.

TAGGART, J., read an opinion in which he arrived at the same conclusions with Judge Willard in relation to the duties of referees upon the reversal or modification of the acts of the commissioners, and that the commissioners were not bound to proceed to lay out the highway upon a simple reversal of their former determination.

Judgment reversed.