## Case No. 4,806.

FIRST NAT. BANK OF NORTH BENNINGTON v. ARLINGTON.

[16 Blatchf. 57.][1]

Circuit Court, D. Vermont. Feb. 25, 1879.

Edward J. Phelps and George W. Harman, for plaintiff.

Charles N. Davenport and James K. Batchelder, for defendant.

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

WHEELER, District Judge. This is a motion for a new trial, in an action of assumpsit upon coupons from bonds of the defendant, after a verdict for the plaintiff at the last term, heard at the same time with the motion in First Nat. Bank of North Bennington v. Bennington [Case No. 4,807]. All the reasons urged in behalf of the motion in that case have been urged in this, and are disposed of here upon the same grounds, in the same way. In addition, it is insisted, that the motion should be granted, because but two of the selectmen of the defendant signed these bonds, although there were three in office at that time; because the bonds were not registered in the town clerk's office; and because the defendant's offer to prove, that, before the assent of the tax payers was executed, Mr. Park, to whom the bonds were delivered, as director of the Lebanon Springs Railroad Company, and who was president of the plaintiff, addressed a public meeting of the tax payers, and said, that, if they did not assent, he should tear up the track of the Bennington and Rutland Railroad, which ran through the town, and in which he had a controlling interest, and they had heard the last whistle, which induced some to assent, was excluded.

In the General Statutes of the state, it was and is provided, in respect to the construction of statutes, that, "all words purporting to give a joint authority to three or more public officers or other persons, shall be construed as giving such authority to a majority of such officers or other persons, unless it shall be otherwise expressly declared in the law giving the authority." Title 2, c. 4, § 2. This has been construed, by the highest court of the state, as giving as full authority to a majority of the selectmen as the full board would have, to issue bonds like these, under a like statute. First Nat. Bank v. Town of Concord, 50 Vt. 257. That construction is sufficient for and binding upon this court, as if it was a part of the statute itself, even if there would be any fair question about it otherwise. Gelpcke v. Dubuque, 1 Wall. [68 U. S.] 175; Leffingwell v. Warren, 2 Black [67 U. S.] 599.

By this act (No. 1) of the Special Session Laws of Vermont, 1867, these towns were authorized and empowered to subscribe for, purchase and acquire, upon the conditions in the act specified, the bonds of the Lebanon Springs Railroad Company. The conditions specified were, that no such subscription, purchase or contract should be made, unless the assent in writing thereto of a majority of the tax payers, both in number and amount of tax, should be obtained, to be certified to by the commissioners named in the assent, of which fact the law further provided that their certificate should be conclusive evidence. In this case, the purchase of the bonds of the Lebanon Springs Railroad Company was assented to by the requisite majority of the tax payers, as shown by the certificate of the commissioners, and the purchase was made. The purchase of these bonds was within the scope of the corporate powers of the town, as enlarged by the act, and the bonds became the corporate property of the town, which the town was holden to pay for. The bonds of the town in question were issued and delivered in payment for those railroad bonds. So, they were executed and delivered upon a sufficient consideration, if any was required, and however valueless the railroad bonds ultimately turned out to be, and in satisfaction of a debt which the town had become bound to provide for. And the selectmen may have had power, under the provision of the General Statutes of the state which gives them authority to "audit, and, in their discretion, allow, the claim of any person against the town, for money paid or services performed for the town," and to draw orders on the treasury for the sum so allowed, to allow and draw orders for this debt. Title 9, c. 15, § 52. The powers of the selectmen, under this section, are held to be very broad. Dix v. Dummerston, 19 Vt. 262; Hollister v. Pawlet, 43 Vt. 425; Cabot v. Britt, 36 Vt. 349; Burton v. Norwich, 34 Vt. 345. Still, the selectmen would not have power, under that general statute, to issue these bonds, and much more would the treasurer lack power, under any general provision, to issue the coupons. The nature and effect of these instruments is quite different from any they could find any color for executing. So, the authority to issue them must be looked for only in this special act, and, when found, it could be exercised only in the mode provided by the act. The act (section 4), after authorizing the making and issuing the bonds by the towns, with coupons, for the purpose of making any purchase or fulfilling any subscription or contract authorized by the act, or of raising money so to do, provides: "which said bonds or notes shall be signed by the selectmen, and countersigned by the treasurer, of the town issuing the same, and shall be dated, numbered and registered in the town clerk's office of such town. And said coupons shall be signed by said treasurer. And said notes or bonds so made and issued shall create a valid obligation against such town, according to their tenor." This registry of the bonds would not mean a record of them at large, as the word used in other connections and places might indicate, but here, as used in connection with the requirement that the bonds should be numbered and dated, would seem to mean that the number and date of the bonds, with the amount, probably, should be entered of record in the town clerk's office. The object, doubtless, was to afford a place where all interested could ascertain readily the particulars of such bonds. There is no provision requiring the entry of the fact of registry upon the bonds, nor

expressly pointing out who should procure the registry to be made. Nor is there any providing that they shall not be binding until registered. As to that, the provision is, that they shall create a valid obligation when "so made and issued." The registration would be no part of making the bonds, for it would have nothing to do with their structure. It would be making the record in the clerk's office. It would have nothing to do with issuing them; literally, for that would be sending them out, putting them into circulation, or delivering them from authority. So, the registration is not any part of what the law requires to make them binding, unless it is impliedly brought in for that purpose from usage, or in some other mode. The law of the state requires the selectmen of towns to keep a record of all accounts by them allowed, and of all orders drawn on the treasury, under the provisions authorizing them to draw orders. Gen. St. tit. 9, c. 15, § 53. Still, it has never been heard to be claimed or thought, that their failure to keep such records would in any manner affect the orders drawn, or their validity. A statute of Kansas required that such bonds should be registered in the municipality issuing them, and in the office of the auditor of state, who was required to certify thereon, among other things, that they had been registered in his office according to law, and provided that they should not bear interest or be negotiable until after delivery and registration thereof. In Rock Creek Tp. v. Strong, 96 U. S. 271, the action below was on bonds of the township issued under this statute, in favor of a purchaser, and the defendant offered to show that they had never been registered in the office of the auditor of state, although his certificate that they had been so registered was endorsed upon them. The auditor of state was not an officer nor an agent of the township, and his certificate could not estop the township from showing the fact. The purpose of the registration must have been the same as of that provided for these bonds. And it would more clearly appear to be a part of the transaction of issuing them, for, they were not, by the law, to bear interest, or be negotiable, until it had been done. Still, the court below, in that case, excluded the evidence, and the decision was affirmed in the supreme court. As the law there required a certificate of the registration to be endorsed upon the bonds and the law here did not, the bonds here, without such endorsement, would stand the same as those there would with it, when there was no registration in fact in either case. The requirement of registration seems to be directory merely, and want of compliance was not made by the terms of the act, and cannot justly be held, to affect the validity of the bonds themselves.

If Mr. Park did say what the defendant offered to prove he said, and it had the effect offered to be shown, there was no accompanying offer to show it was not true, not but that it was said in good faith, in the course of legitimate discussion. Hence, it could not affect the bonds, even if the plaintiff is so situated as to be affected the same as Mr. Park would be.

The motion is overruled and judgment is entered on the verdict.