DRAPER v. SPRINGPORT.

Where a town in New York subscribed for stock in a railroad company, and the
commissioners, authorized to execute bonds in payment therefor, issued un-
sealed obligations, whereon a *bona fide* holder for value brought suit, — *Held*,
that the absence of a seal on the paper does not affect his right to recover.

ERROR to the Circuit Court of the United States for the
Northern District of New York.

The facts are stated in the opinion of the court.

Mr. *James R. Cox* for the plaintiff.
Mr. *William F. Cogswell* for the defendant.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The action below was brought by Draper against the town
of Springport, to recover the amount of certain interest cou-
pons annexed to certain instruments called bonds of the town
of Springport, issued in payment of stock of the Cayuga Lake
Railroad Company. One defence was that the bonds had no
seals affixed to the signatures of the town commissioners. For
this defect the court below gave judgment for the defendant,
a jury having been waived by the parties. Other defences were
set up on the trial, but were overruled by the court. These
were : 1st, That on a *certiorari* (to which the plaintiff was not
a party) the proceedings of the town commissioners, which
resulted in the issue of the bonds, were set aside. 2d, That
there was no sufficient consent of taxpayers of the town to
authorize the commissioners to subscribe for the stock of the
railroad company. 3d, That many of those taxpayers who did
subscribe revoked their consent before the commissioners acted,
which reduced the number of those consenting below that
required to give the commissioners power to act.

Without expressing any opinion as to the sufficiency of the
defences which were overruled, we are of opinion that the
ground on which the court below dismissed the petition was
insufficient. It related merely to a matter of form, and not
to the substance of the transaction. The statute under which
the bonds (so called) were issued was passed April 14, 1869,
and was entitled "An Act to facilitate the construction of

the Cayuga Lake Railroad, and to authorize the town of Springport, Cayuga County, to subscribe to the capital stock thereof." The first section authorized the county judge to appoint, under his hand and seal, three freeholders of the town, as commissioners to carry into effect the purposes of the act. These commissioners were duly appointed and qualified. The second section of the act was as follows: —

"SECT. 2. It shall be lawful for the said commissioners to borrow on the faith and credit of the said town such sum of money as the taxpaying inhabitants shall fix upon by their assent in·writing,' not exceeding in amount ten per cent of the assessed valuation of the real and personal property of said town as shown by the assessment-roll for the year 1868, for said town, at a rate of interest not exceeding seven per cent for a term not exceeding thirty years, and to execute bonds therefor under their hands and seal.

"The bonds so to be executed may be in such sums and payable at such times and places, not exceeding thirty years, and in such form as the said commissioner or commissioners and their successors may deem expedient: *Provided, however*, that the powers and authority conferred by this section shall only be executed upon the condition that the consent shall first be obtained in writing of the majority of the taxpayers of said town owning more than one-half of the taxable property of said town assessed and appearing upon the assessment-roll of the year 1868, which consent shall be proved· or acknowledged in the same manner as conveyances of real estate are proved or acknowledged, or proved by a subscribing witness ·who shall swear, in addition to the ordinary form of affidavits of subscribing witnesses, that the party assenting informed the witness that he knew the contents thereof.

"The proof required to show that a majority of the taxable inhabitants representing a majority of the taxable property of the town have given their consent required by this section shall be by the affidavit of the assessors or a majority of them of said town, which affidavit, consent, and acknowledgment shall be filed in the town and county clerk's office of the said county, with a copy of the assessment-roll of the year 1868, and it shall be the duty of the said assessors, and they are hereby required, to make such affidavit whenever the said consent shall be obtained on or before the first day of January, 1870.

"(The time of obtaining consents was extended by the act of April 1, 1870, to April 1, 1871.)

"A certified copy of such affidavit, consent, and acknowledg ment shall be presumptive evidence of the facts therein containe and shall be admitted in any court of this State, or before an, judge or justice thereof."

Sect. 3 authorized the commissioners in their discretion to dispose of the bonds to anybody at not less than par, and directed that the money raised by the sale of bonds should be invested in the stock of the Cayuga Lake Railroad Company, and that the said money should be used and applied in the construction of said railroad, beginning at the north end as aforesaid, and its buildings and appurtenances, and for no other purpose whatever.

It was further enacted that the commissioners might subscribe for the stock of the company for the amount consented to, and might purchase the stock, receive certificates, and the town should thereby acquire all the rights and privileges of other stockholders, might participate in meetings of stockholders, and be eligible as directors.

Sect. 20 authorized the commissioners to exchange the bonds at par, and issue them directly to the railroad company, receiving therefor the stock of the company.

On the 23d of March, 1871, the three assessors of the town made an affidavit in accordance with the act, stating the facts necessary to enable the commissioners to proceed.

The commissioners thereupon subscribed for one thousand shares of the capital stock of the railroad company, of $100 each, and issued the bonds in question in payment thereof. The plaintiff purchased the coupons on which the suit was brought in the ordinary course of business, in good faith, and for a valuable consideration.

It is apparent from the law, that the substantial thing authorized to be done on behalf of the town was, to pledge the credit of the town in aid of the railroad company in the construction of its road, by subscribing to its capital stock, and issuing the obligations of the town in payment thereof. The technical form of the obligations was a matter of form rather than of substance. The issue of bonds under seal, as contradistinguished from bonds or obligations without a seal, was merely a directory requirement. The town, indeed, had no seal; and

the individual seals of the commissioners would have had no legal efficacy; for the bonds were not their obligations, but the obligations of the town; and their seals could have added nothing to the solemnity of the instruments. The fundamental authority contained in the law is found in the first three lines of the second section: "It shall be lawful for the said commissioners to borrow on the faith and credit of the said town such sum of money as the taxpaying inhabitants shall fix upon by their assent in writing." The commissioners executed this authority in the form allowed by the statute, namely, by a direct purchase of the stock with the bonds issued. They might have sold the bonds for money, and paid the money for the stock. Had they done this, the town would have been liable to pay the money borrowed, even if the obligations given for it had been void. Where the transaction has nothing in it of *malum in se*, and the parties are not *participes criminis* in a violation of law, money had and received by one from the other in good faith, may be recovered even though the security given therefor be void for some technical defect or illegality. This matter was sufficiently discussed in the case of *Thomas* v. *City of Richmond* (12 Wall. 349), and was very ably considered in *Oneida Bank* v. *Ontario Bank*, 21 N. Y. 490. The fact that the stock was taken directly in exchange for the bonds, instead of selling the latter for money and investing in stock, can make no material difference in the nature of the transaction. It is equally the case of value lawfully received for an innocent obligation, whether valid or invalid, given therefor. If valid, a recovery may be had on it; if invalid, a recovery may be had upon the original consideration.

We cannot agree with the courts of the State, that the form of a seal was an essential part of the transaction.

Whether the deviation from the directions of the statute, in the form of the obligations, may not have the effect of notice to the holder, sufficient to allow the other defences to be set up, is a question which it is unnecessary at this time to decide. It may admit of much consideration.

*Judgment reversed, with directions to award a venire de novo.*