<hr />

TOWN OF GREENBURG v. INTERNATIONAL TRUST CO.

(Circuit Court of Appeals, Second Circuit. May 25, 1899.)

No. 82.

1. HIGHWAYS—DETERMINATION OF NECESSITY BY COURTS—VALIDITY OF NEW YORK STATUTE.

Laws N. Y. 1892, c. 493, providing for the extending of highways in one town into or through other towns in the same county, was not in violation of the state constitution because it conferred on certain courts of the state the power to determine the necessity or expediency of such extensions, the highest court of the state having upheld the exercise of such powers by the courts in numerous analogous cases arising under the same constitution.

2. MUNICIPAL BONDS—IRREGULARITY IN ISSUANCE—BONA FIDE HOLDERS.
    The fact that the municipal authorities gave a credit to the purchaser
    of the bonds of a town, instead of selling them for cash, as required by
    the statute, is not a defense to an action on such bonds by a subsequent
    bona fide purchaser.

In Error to the Circuit Court of the United States for the Southern District of New York.

J. Rider Cady, for plaintiff in error.
John Dillon, for defendant in error.

Before WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The bonds in suit were created pursuant to the authority conferred by an act of the legislature of the state of New York entitled "An act to provide for the construction of highways and bridges upon highways running through two or more towns of the same county" (chapter 493, Laws 1892), and their validity is contested upon the proposition that the act violates the constitution of the state. The contention, if well founded, is of course fatal to the validity of the bonds, and no holder of them can invoke protection as a bona fide purchaser, as all purchasers take them with knowledge of the law, and presumed knowledge that they are void.

Section 1 of the act provides as follows:

"Any twelve or more freeholders, residing in any county of this state, may present a petition which must be duly verified by at least all of the said freeholders, to the supreme court at a special term to be held in the judicial district where such court is situated or to the county court of said county, stating that it is necessary for the public welfare and convenience that a highway in any one town in said county shall be continued along and through another town in the same county. Upon receipt of the said petition the said court shall carefully consider the facts therein alleged, and if it shall be satisfied that the said highway is necessary for the public welfare and convenience, and that its continuation and construction will afford a nearer road between two populous points in two towns than by any existing highway, then the said court may make an order directing that a notice shall be published in two newspapers of said county, for two successive weeks, of the time and place when an application for the commissioners shall be made, and at said time and place said court shall make an order appointing three commissioners for the purposes hereinafter described, all of which commissioners shall be freeholders residing within the said county."

By other sections of the act, the commissioners are directed to proceed with due diligence to continue, lay out, open, and construct the highway by as direct a route as they shall deem practicable between the terminal points named in the petition, and build any necessary bridges, are empowered to enter upon necessary lands and remove the fences, and are directed, upon a prescribed notice, to ascertain and determine the damages sustained by any person interested in the lands through which the highway may have been laid out. The act also provides for an appeal from the award of the commissioners by any person aggrieved to the court by which the commissioners were appointed; authorizes the court to confirm, or order the commissioners to alter or amend, the award; provides that the amount ascertained by the commissioners for the expenses and damages of

laying out and constructing the road shall be paid by the town through which it is constructed; directs the supervisor of each of the towns to issue the bonds or obligations of the town for the amount, payable in 20 years from date, and deliver them to the commissioners; and directs the commissioners to pay out the bonds at not less than par, in liquidation of the expenses and damages, or, at their option, to sell them at not less than par, and apply the proceeds for that purpose.

The constitution in force in 1892 (Const. 1846, and amendments) contained no provision in terms prohibiting the legislature from conferring upon the court the powers now in question. As to "officers whose offices may hereafter be created by law," it authorized their selection by appointment "as the legislature may direct" (article 10, § 2), and thereby enabled that body to lodge the appointment with any agency it might see fit to designate. Sturgis v. Spofford, 45 N. Y. 446. It authorized the legislature to ascertain the compensation to be made when private property was to be taken for public use "by not less than three commissioners to be appointed by a court of record as shall be prescribed by law" (article 1, § 7); and under this provision it was adjudged by the court of appeals to be no objection to the constitutionality of an act that it devolved upon the commissioners, thus to be appointed by the court, administrative duties in the management of the public undertaking. In re Village of Middletown, 82 N. Y. 196. Under the general powers confided by the constitution, it has been declared by the highest court of the state that the legislature could delegate to public officers the determination of the expediency of laying out highways and appropriating the property of individuals for the purpose; could direct the construction of highways by towns; could compel the creation of a town debt therefor by the issue of bonds; could impose a tax upon the property of the towns to pay the bonds; could do these things without the consent of the citizens or the town authorities; and that, when the legislative act has committed to public officers the duty of judging of the expediency of making an appropriation of property for a public use, it is no objection to its validity that it permits them to act upon their own views of propriety and duty without the aid of a forensic contest, or affording a hearing upon the question to parties interested. People v. Smith, 21 N. Y. 595; People v. Flagg, 46 N. Y. 401.

That the legislature can delegate to the courts the power of determining the question of the extent and necessity of an appropriation of property for public use is shown by the decisions under the general railroad act of 1850. In Railroad Co. v. Davis, 43 N. Y. 137, the court used this language:

"It is, we think, the clear construction of the statute that the court is to determine, upon the application by a railroad company to acquire additional lands for the purposes of the corporation, the question as to the necessity and extent of the appropriation. The plenary power of the legislature covering the subject would have authorized it to designate the particular premises which the respondent might take for its purpose. The general purpose being public, the legislature could have defined the extent of the appropriation necessary for the public use. But this the legislature has not attempted to do, nor has it

delegated to the railroad company the power to determine the necessity for the appropriation of private property for corporate purposes. It has constituted the court a tribunal to hear and determine on the premises."

In Re New York Cent. R. Co., 66 N. Y. 407, the court said:

"This necessity is therefore made a judicial question, and when controverted it is obvious that the facts must, in some form, be laid before the court to enable it to decide."

We do not understand that the constitutionality of the present act is impugned upon any other contention than that it undertakes to devolve upon the court legislative or administrative, instead of judicial, functions. The separation of legislative, executive, and judicial powers is recognized throughout the constitution, as it is in the constitutions of all the other states; and, if the question of the necessity of opening public highways is not a judicial question, the legislature could not commit it to the courts, and the act is clearly void. This is the real inquiry, and, as it appears to us, the only one that requires discussion upon this branch of the cause.

If the legislature can devolve upon a court the decision of the necessity of an appropriation of property for the uses of a railway, it is difficult to understand why this may not be done when the public use is for the purpose of a common highway. No adjudication by the courts of this state, or by any other court, directly in point, is cited for the proposition that the legislature may not confer upon a judicial tribunal the power to determine as to the necessity of the construction of a highway. Inasmuch as such a question can be referred to a municipality, or to public officers, for determination, the objection to depositing the power with a judicial tribunal can only be found in the consideration that the question is not of a nature to involve the exercise of the judicial function. The objection is met by many decisions of the courts of this state in cases arising under statutes authorizing courts to review the action of commissioners in laying out, or refusing to lay out, highways. In Lawton v. Commissioners, 2 Caines, 179, the supreme court, in considering a statute which authorized the commissioners of highways to lay out a road, and, if they refused to lay it out, gave an appeal to the judges of the court of common pleas, assumed as unquestionable the authority of the judges to decide the appeal upon the merits,—"the fitness or unfitness of laying out the road." In People v. Champion, 16 Johns. 61, the case arose under a later statute authorizing an appeal to three of the judges of the court of common pleas by any person aggrieved by the determination of the commissioners of highways in laying out, or refusing to lay out, any road, and the court declared that the power of the judges in appeals from a refusal authorized them "to lay it out themselves." Commissioners of Highways of Warwick v. Judges of Orange Co., 13 Wend. 433, was a case arising under a later statute containing substantially similar provisions, and the court said:

"The proceeding by appeal was not intended to be a review of legal questions, or of irregularities that might exist in the preliminary steps, or of a right of certiorari, but to be an examination of the necessity or propriety of the road, assuming all of the previous steps to have been regularly taken."

In People v. Judges of Dutchess Co., 23 Wend. 360, the court said:

"The commissioners had decided, in effect, that no road on any route between these points should be laid out. Upon that decision the judges were sitting in review, and it was a matter of no moment what particular route either the jury or the commissioners had examined."

In People v. Commissioners of Highways of Cherry Valley, 8 N. Y. 476, the syllabus is:

"Upon an appeal from the determination of the commissioners of highways refusing to lay out a highway, the referees have all the powers, and are charged with all the duties, formerly possessed by the three judges of the court of common pleas under the provisions of the Revised Statutes. To reverse the determination of the commissioners, they should make such an order in relation to laying out the highway as in their judgment the commissioners should have made."

In People v. Commissioners of Highways of Town of Milton, 37 N. Y. 360, the case was one where the commissioners had refused to open a highway, and, upon an appeal from their order, the referees had ordered it to be laid out and opened. The court affirmed the lower courts in ordering a peremptory mandamus compelling the commissioners to open the road. All of these cases necessarily sanction the proposition that the question of the propriety and necessity of opening, or refusing to open, a highway can be properly committed to the decision of a judicial tribunal.

We entertain no doubt that the present act was a constitutional exercise of power by the legislature, and, having reached this conclusion, do not feel it to be our duty to consider whether it was expedient or inexpedient legislation. It is proper to say, however, in answer to the suggestion that the act as framed precluded the officers or citizens from any voice in a matter entailing a large debt upon the town, that we do not so read the act. The commissioners were to be appointed after two weeks' public notice; and at any time before the appointment was made it was within the power of the court to reconsider its decision, and refuse to appoint commissioners, and it is to be presumed that the court would have given due weight to any remonstrances or representations had any been presented.

The bonds in suit were issued and negotiated conformably in all respects to the provisions of the act but one. They were negotiated at par, but not for cash, and under an agreement with the purchaser that, as to a portion of the price, payment might be deferred and collateral securities substituted meanwhile. Assuming this to have been a departure from the statutory requirement, as the plaintiff was a bona fide holder of the bonds, without notice of the deviation by the agents of the town from the terms of their authority, the facts did not afford any defense to his action. Mercer Co. v. Hacket, 1 Wall. 83; Grand Chute v. Winegar, 15 Wall. 355; Provident Life & Trust Co. of Philadelphia v. Mercer Co., 170 U. S. 593, 18 Sup. Ct. 788. The court below properly directed a verdict for the plaintiff, and the judgment is affirmed, with costs.