D'ESTERRE v. CITY OF NEW YORK et al.

(Circuit Court of Appeals, Second Circuit. March 7, 1900.)

1. MUNICIPAL BONDS—VALIDITY—FORMAL DEFECTS.

Provisions of statute authorizing the issuance of negotiable municipal bonds, which relate only to the form of the bonds, and serve no purpose in safeguarding the municipality, are directory only, and a departure therefrom in omitting the date and name of payee, or in failing to state the place of registration in bonds issued thereunder, is not a defect of substance, which renders them invalid.

2. SAME—MISRECITAL OF STATUTE.

The fact that municipal bonds erroneously recite the statute under which they were issued is immaterial, and does not affect their validity, where it is not claimed that any condition precedent to their issuance, required by the statute under which they were in fact issued, was omitted.

3. SAME—STATUTE GOVERNING.

Where a special act authorizing the issuance of municipal bonds contains provisions prescribing the form and conditions of such bonds, it supersedes the general statutory provisions on that subject, and is alone to be looked to in determining the formal sufficiency of bonds issued thereunder.

4. SAME—DEFENSES—BONA FIDE PURCHASER.

Where a town issued negotiable bonds in conformity to the requirements of the statute which authorized their issuance, in all substantial respects, and delivered them to a purchaser, by whom they were negotiated for value to a third person, who took them in good faith, the municipality cannot avoid liability thereon on the ground that its officers, without authority, sold them on credit, and the town never received payment therefor.[1]

---

[1] Bona fide purchasers of municipal bonds, see note to Pickens Tp. v. Post, 41 C. C. A. 6.

5. Same—Greater New York Charter—Bonds of Constituent Municipalities.

The town of Gravesend issued bonds, which, in the hands of purchasers, became valid obligations against it. Subsequently the town was annexed to the city of Brooklyn, the act (Laws N. Y. 1894, c. 449) providing that the city should not be liable for any debt of the town, and its property should not be taxed for the payment of such debt, but that the property of the town should remain liable therefor, and the city authorities should levy thereon the taxes necessary to pay the same. By the Greater New York charter the town became a part of the city of New York. Such charter deprived all of the constituent municipalities of the power to levy taxes, and provided that all the valid debts of such municipalities should be a common debt of the new city, and that any taxation to pay the same should extend equally to all property throughout the city. *Held*, that although the town of Gravesend had previously ceased to be a distinct municipality, and was not enumerated as one of those consolidated, such provisions of the charter must be construed to include its valid debts, and the bonds issued by it became a part of the common debt of the city, and could be enforced by an action against it.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

Under chapter 118 of the Laws of 1892, amended by chapter 171 of the Laws of 1893, certain bonds of the town of Gravesend were claimed to have been issued, amounting to $148,000, to Coffin & Stanton, a firm of bankers or bond dealers, $24,000 of which were pledged to the complainant by Coffin & Stanton as security for a loan.

The validity of these bonds being disputed, the complainant brought this action in equity, substantially to determine the validity of the bonds.

John Whalen, Corp. Counsel (George L. Sterling, of counsel), for appellants.

Henry B. B. Stapler, for appellee.

Frederick P. Delafield, amicus curiæ.

Before WALLACE, SHIPMAN, and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal by the defendants from a decree for the complainant in a suit in equity establishing the validity of certain bonds created by the former town of Gravesend, directing the registration of the bonds by the defendant the comptroller of the city of New York, and adjudging that the city of New York pay the accrued interest upon the bonds in accordance with their terms.

March 10, 1892, the legislature of the state of New York passed an act (chapter 118, Laws 1892) entitled "An act in relation to local improvements in the town of Gravesend, in the county of Kings," and March 22, 1893, passed an act amendatory thereof, and repealing all parts of the earlier act inconsistent therewith (chapter 171, Laws 1893). By these acts it was provided that the cost of all local improvements in the town of Gravesend should be paid in the first instance by the sale of bonds of the said town; and the supervisor of the town was empowered to borrow on its faith and credit the necessary amount, and in its name to execute and issue bonds therefor. The act of 1893 authorized such bonds to be exchanged for similar bonds theretofore issued, or to be sold to the highest bidder, and the proceeds used for the construction and carrying on of such

improvements. In January, 1894, in order to provide for the pay-ment of outstanding bonds of the town then about to mature, the supervisor of the town, assuming to do so under the authority of these acts, issued 148 bonds, of the denomination of $1,000 each, advertised for bids, sold them to the highest bidder, and delivered them to the purchasers, a banking firm. The bankers, instead of paying cash for the bonds, were allowed by the supervisor to re-tain the purchase money, $148,000, and credit the town on their books with the amount, upon the understanding that they were to pay $30,000 on the 1st day of the next month, and the balance from time to time as required by the town for the payment of its outstanding bonds. February 2, 1893, the bankers pledged the bonds to the complainant as security for a loan from him of $23,000. The loan had been originally made by the complainant upon other se-curity, but at the date in question these securities were surrendered, and the bonds in question substituted in their places. The bankers failed before paying to the town the purchase price of the bonds.

By an act of the legislature of May 3, 1894 (chapter 449, Laws 1894), the town of Gravesend was annexed to the city of Brooklyn. This act provided that the city of Brooklyn should not be liable to pay any debt, liability, or obligation of the town previously con-tracted or incurred, and that its property should not be taxed to pay any such liabilities. But it also provided that the property of the town should remain liable therefor, and that the moneys to meet the same should be raised by taxation upon the property of the town; the taxes to be collected and enforced after the act should take effect in the same manner and by the same officers as the taxes of the other wards of the city.

Default having been made in paying the interest upon the bonds, this action was brought. It was originally brought against the city of Brooklyn and its comptroller, but before it was heard the legisla-ture of the state of New York passed the act known as the "Greater New York Charter," annexing to and consolidating with the city of New York the various municipal corporations described therein, in-cluding the city of Brooklyn. Chapter 378, Laws 1897. By section 8 of that act all the laws theretofore passed creating any municipal debt of the corporations united and consolidated, or for the pay-ment thereof or respecting the same, remain in full force and effect, except that the same shall be carried out by the corporation of the city of New York. The act also provides (section 1614) that pend-ing actions relating to any of the municipal and public corporations consolidated may be continued without change of name or title, or on motion such change may be made. By an order of the court en-tered pending the hearing the city of New York and its comptroller were substituted as defendants. The right of the complainant to resort to a court of equity under the circumstances of the case rests upon the authority of Mt. Pleasant v. Beckwith, 100 U. S. 514, 25 L. Ed. 699, and has not been challenged by the appellants.

The first question which we are called upon to consider is whether the bonds in suit were, in the hands of the complainant, valid obliga-tions against the town of Gravesend. It is conceded that the super-

visor was duly authorized by the acts mentioned to pledge the credit of the town and issue its bonds for the amount of $148,000, but it is insisted that in exercising this power some of the statutory requirements in respect to the form of the bonds were not complied with. Under the act of 1893 the bonds to be created may be either coupon or registered bonds, or coupon bonds registered as to principal only. They are to be signed by the supervisor and countersigned by the treasurer of the town, and, if they are registered, bonds are to be made payable to the persons to whom they are issued, the place of registration is to be fixed in the bonds by the officers signing the same, and a certificate showing the registration is to be indorsed thereon. When sold by the payees the bonds may be registered in the names of the new purchasers. The bonds in suit purport to be registered bonds. They are signed and countersigned as the act requires, but they do not contain the name of the payee. They are not dated, and do not on their face contain any designation of the place of registration. They are made payable in blank, and have an indorsement upon the back, "This bond is registered in town treasurer's office, Gravesend." It is objected that these departures from the prescribed form invalidate the bonds.

It was obviously the intention of the statute that the bonds to be created should be negotiable. As it authorized the creation of coupon bonds at the discretion of the supervisor, which were not to be registered even as to the principal sum, it is manifest that the provisions in respect to registration, in respect to the name of the payee, and in respect to all matters merely of form and phraseology, were not designed as limitations of his authority, or to protect the town against his abuse of his functions. They were formalities which could not subserve any essential purpose, except to assure purchasers that they were buying bonds which were literally perfect. If purchasers were willing to accept registered bonds which were not, as to particulars devised for their interests or convenience, in strict conformity with these provisions, the town could not be harmed. The provisions should therefore be considered as directory, and not mandatory, and, in the absence of any language in the act importing that noncompliance would invalidate the bonds, any departure in respect to them should not be deemed a defect of substance. "While courts may properly see to it that proceedings for casting burdens upon a community comply with all the substantial requirements of the statute, in order that no such burden may be carelessly imposed, yet such statutes are not of a criminal character, and the proceedings are not to be so technically construed and limited as to make them a mere snare to those who are encouraged to invest in the securities of the municipality." Town of Andes v. Ely, 158 U. S. 321, 15 Sup. Ct. 957, 39 L. Ed. 1001. In Supervisors v. Galbraith, 99 U. S. 214, 25 L. Ed. 410, the statute under which the municipal bonds were issued provided that they should be "made payable to the president and directors of the company and their successors and assignees," but in lieu of complying with that provision the bonds were made payable to bearer. The court said:

"The statutory requirement in this particular is only directory. The defect is one of form, and not of substance. The irregularity was committed by the servants of the county, and the county is estopped to take advantage of it."

In Bernards Tp. v. Stebbins, 109 U. S. 341, 3 Sup. Ct. 252, 27 L. Ed. 956, the statute under which the municipal bonds were issued provided that they should be executed by the commissioners "under their hands and seals, respectively," and they were executed without seals. In affirming that part of the decree of the court below adjudging the bonds "to be held and deemed to be valid and effectual in law as if they had been in fact sealed by the commissioners before being issued," the supreme court quoted the language used in Draper v. Springport, 104 U. S. 501, 26 L. Ed. 812, as follows:

"It is apparent from the law that the substantial thing authorized to be done in behalf of the town was to pledge the credit of the town in aid of the railroad company in the construction of its road, by subscribing to its capital stock, and issuing the obligations of the town in payment thereof. The technical form of the obligations was a matter of form, rather than substance. The issue of bonds under seal, as distinguished from bonds or obligations without a seal, was merely a directory requirement."

In Town of Solon v. Williamsburg Sav. Bank, 114 N. Y. 122, 21 N. E. 168, the statute under which municipal bonds were issued provided that the bonds to be made and executed by commissioners should be attested by their individual seals. The court held that this provision had not been complied with, but ruled that noncompliance did not invalidate the bonds. The court said:

"There are no negative words in the statute declaring or necessarily implying such effect of the omission of the seal; and whether or not the requirement was merely directory, as held in Draper v. Springport, 104 U. S. 501, 26 L. Ed. 812, inasmuch as they were issued and delivered by the commissioners in the performance of their duty, and upon a consideration, the mistake or failure to affix these seals does not defeat the enforceable validity of the bonds."

In Bank of Statesville v. Town of Statesville, 84 N. C. 169, where a statute authorizing the issue of town bonds subject to a vote of the qualified electors provided that they should be signed by the town magistrate, treasurer, and commissioners, it was held that the provisions were directory only, and that bonds issued after a legal vote, but signed by the magistrate and treasurer only, were valid. In First Nat. Bank of North Bennington v. Town of Arlington, 16 Blatchf. 57, Fed. Cas. No. 4,806, the statute under which town bonds were created required them to be registered in the clerk's office of the town. The court, in deciding that the omission of the officers of the town to cause the bonds to be registered did not impair their validity, said:

"The requirement of registration seems to be directory merely, and want of compliance was not by the terms of the act, and cannot justly be held, to affect the validity of the bonds themselves."

The objection that the bonds erroneously recited the statute under which they purported to be issued is as untenable as the others which have been considered. If there had been no recital whatever, the validity of the bonds would not have been affected by the omission. A recital is valuable as affording the basis of an estoppel

104 F.—39

when it is alleged by the municipality that conditions precedent to the exercise of the power of creating bonds, prescribed by statute, have not been complied with, but otherwise it is of no significance. The erroneous recital was innocuous. Commissioners v. January, 94 U. S. 202, 24 L. Ed. 110; Board v. Beal, 113 U. S. 227, 5 Sup. Ct. 433, 28 L. Ed. 966.

The fact that the bonds were not dated and did not contain the name of any payee is of no importance. Neither a date nor a named payee is essential to the validity of negotiable instruments. The date will be computed from the day of delivery, and may be inserted by a bona fide holder, and any such holder is at liberty to insert the name of a payee. 2 Am. & Eng. Enc. Law, p. 320.

The provisions of the General Statutes of the state respecting the form and registration of municipal bonds have no application to the case, because the bonds in suit, having been created under a special act prescribing the formalities to be observed in this respect, are not within the operation of the General Statutes. The special act supplies the exclusive rule by which to determine whether or not the formalities had been complied with. State v. Stoll, 17 Wall. 436, 21 L. Ed. 650; Townsend v. Little, 109 U. S. 504, 3 Sup. Ct. 357, 27 L. Ed. 1012; In re Murray Hill Bank, 153 N. Y. 210, 47 N. E. 298.

If the bonds in suit had been sold for cash, we have no doubt that they would have been valid obligations against the town in the hands of the bankers who purchased them from the supervisor. Undoubtedly the statute contemplated such a sale, and the bankers, who were parties to a transaction which contravened the statute, did not acquire a valid title to the bonds; but if they had subsequently paid for the bonds, and the town had received the money, it is unquestionable that the town could not have successfully defeated their title. The complainant, however, acquired the bonds without notice and for value; and, as a bona fide purchaser, his right to recover upon the obligations is precisely as it would be if the bonds had been those of an ordinary corporation, instead of a municipal corporation. If the power exists in the municipality to issue negotiable bonds, the bona fide holder is protected against irregularities on the part of its agents in negotiating them with the public. The complainant, as well as the original purchasers, was bound to know that the supervisor had no authority to sell the bonds on credit; but he was not bound to know that the supervisor had made such a sale, and, when he found that they had been negotiated with the public and delivered, he was entitled to assume, in the absence of notice to the contrary, that the supervisor had negotiated them regularly and legitimately. Mercer Co. v. Hacket, 1 Wall. 83, 17 L. Ed. 548; Grand Chute v. Winegar, 15 Wall. 355, 21 L. Ed. 170; Stewart v. Lansing, 104 U. S. 505, 26 L. Ed. 866; Provident Life & Trust Co. v. Mercer Co., 170 U. S. 593, 18 Sup. Ct. 788, 42 L. Ed. 1156. The case falls directly within the recent judgment of this court in Town of Greenburg v. International Trust Co., 36 C. C. A. 471, 94 Fed. 755, and the language used in that case is apposite. We there said:

"The bonds in suit were issued and negotiated conformably in all respects to the provisions of the act but one. They were negotiated at par, but not for cash, and under an agreement with the purchaser that, as to a portion of the price, payment might be deferred, and collateral securities substituted meanwhile. Assuming this to have been a departure from the statutory requirement, as the plaintiff was a bona fide holder of the bonds, without notice of the deviation by the agents of the town from the terms of their authority, the fact did not afford any defense to his action."

It remains to be considered whether the bonds were enforceable against the city of New York. Although by the provisions of the act annexing the town of Gravesend to the city of Brooklyn the latter was not to be liable for the previous debts of the town, and the property of the city not acquired by the annexation was exempt from taxation for the payment of such indebtedness, the power and the duty were devolved upon the city by the act to raise the moneys necessary to pay such indebtedness by taxation of the property annexed. This duty it was bound to fulfill, as otherwise the creditors of the town would be remediless. It cannot be doubted that the creditors of the town could, before the enactment of the Greater New York charter, have compelled the authorities of the city of Brooklyn, by mandamus, to assess and collect the necessary tax. Were it not so, the provision exempting the city of Brooklyn from liability for the debts of the town would have been void, because unconstitutional. Where the resource for the payment of the debts of a municipal corporation is the power of taxation existing when the debt was created, any law which withdraws or limits the taxing power, and leaves no adequate means for the payment of the debt, is forbidden by the constitution of the United States, and is null and void. Port of Mobile v. Watson, 116 U. S. 289, 6 Sup. Ct. 398, 29 L. Ed. 620; Von Hoffman v. City of Quincy, 4 Wall. 535, 18 L. Ed. 403; Wolff v. New Orleans, 103 U. S. 358, 26 L. Ed. 395; Ralls Co. Ct. v. U. S., 105 U. S. 733, 26 L. Ed. 1220. The power thus devolved upon the city of Brooklyn has been destroyed by the provisions of the Greater New York charter. The remedy by a mandamus has been destroyed, because there is no longer any corporate body or officials to execute the mandate, and section 7 of the charter enacts that no municipal corporation whose territory is thereby annexed to the city of New York shall "levy any tax or assessment upon property within the city of New York as herein constituted." Section 5 of the charter enacts that all the valid debts of the municipal corporations, towns, incorporated villages, and school districts therein united and consolidated, as well as the debts of the city of New York, shall be common debt of the city of New York as thereby constituted, and that, so far as resort to taxation is authorized or necessary to pay such debts, such taxation shall extend equally throughout the territory of the corporation herein constituted; "it being the intent hereof that the obligations and liabilities of the city of New York, as the successor of the municipal and public corporations consolidated in it, shall be the same as and not otherwise or greater than the respective obligations and liabilities of the several constituent corporations; and that the city of

New York shall succeed in all their rights as well as to their obligations and liabilities in respect thereof."

The town of Gravesend was not enumerated as one of the consolidated municipalities, and, as it had become extinct as a municipality, it may be that the literal terms of the section referred to do not describe it. We cannot suppose, however, that it was the legislative intention that the Greater New York charter should impair the obligations of the contract between the town of Gravesend and its creditors, by destroying the remedy for enforcing the contract, or should withhold from the city of New York the power to tax the property of that town for the payment of its debts, while granting to it the power to tax such property for the payment of the debts of all the consolidated municipalities. Yet such would be the effect of the legislation unless section 5 is construed to mean that the valid debts contracted by any town, whether one having a corporate existence at the time of the enactment, or one which had lost its corporate existence by a merger with one of the constituent municipalities, are to be regarded as a part of the common debt of the city of New York. While the phraseology, read literally, may not include the debts of an extinguished municipality whose property has passed to another municipality, and from the latter to the city of New York, a more liberal reading, and one which we think accords with the legislative intention, would include them.

In Mt. Pleasant v. Beckwith, before referred to, a municipal corporation had been dissolved, and its territory divided between and annexed to three adjacent corporations. Upon this state of facts the court held that, unless the legislature otherwise provided, the corporations to which the territory and the inhabitants of the divided corporation had been transferred were severally liable for their proportionate share of its debts, and were vested with its power to raise revenue wherewith to pay them by levying taxes upon the property transferred, and the persons residing therein. The court also held that the creditors of the extinguished corporation were entitled to resort to a court of equity, and affirmed a decree adjudging the three corporations liable accordingly.

Upon the conclusions we have reached, the city of New York would be liable in an action at law; but as the defense of an adequate remedy at law has not been raised by the answer, and no assignment of error has challenged the jurisdiction of the court below, we do not deem it necessary to decide that the complainants' bill should not have been entertained.

The decree is affirmed, with interest and costs.