## County of Henry *v.*. Nicolay.

1. Where the charter of a railroad company, granted by Missouri prior to the adoption of the Constitution in 1865, made it lawful for the county court of any county in which any part of the route of said railroad or of its authorized branches might be, or for any county adjacent thereto, to subscribe to the stock of the company, and to issue bonds of the county in payment therefor, the power of the county court so to subscribe did not become subject to the fourteenth section of art. 11 of that Constitution, which requires the assent of two-thirds of the qualified voters of the county to such subscription.

2. The Supreme Court of that State has decided that the said fourteenth section does not apply to the construction of branch roads authorized by the original charter of a railroad company, but undertaken as an independent enterprise under the act of the legislature of March 21, 1868.

3. Where the bonds of a county, issued by the county court in payment of its subscription to the stock of a railroad company, show on their face that they were issued pursuant to a law which authorized their issue without the assent of the qualified voters of the county, given at an election, and there is nothing on them to show that they were not regularly issued, it is not incumbent upon a purchaser of them to inquire whether the company has pursued the regular steps necessary to entitle it to receive them. Where the agents of the company have them for sale, he has a right to presume that they were lawfully entitled to them.

4. The fact that subsequently to making the subscription, but before the issue of the bonds, the company transferred its franchises to another company does not alter the case.

5. *County of Scotland* v. *Thomas,* 94 U. S. 682, reaffirmed.

Error to the Circuit Court of the United States for the Western District of Missouri.

This is an action for the recovery of the amount due upon certain coupons annexed to bonds issued by the county of Henry, Missouri. The following is a copy of one of the bonds: —

"Henry County Bond. — State of Missouri.

"$1,000.

"Interest ten per cent per annum, payable semiannually on the first days of January and July.

"Know all men by these presents, that the county of Henry, in the State of Missouri, acknowledges itself indebted and firmly bound to the Tebo and Neosho Railroad Company, to the use and in the name of the Clinton and Memphis Branch of the Tebo and

Neosho Railroad, in the sum of $1,000, which sum the said county hereby promises to pay to the Tebo and Neosho Railroad Company, or bearer, to aid in building said branch railroad, at the National Park Bank, in the city of New York, on the first day of January, 1881, together with interest thereon at the rate of ten per cent per annum, which interest shall be paid semiannually on the first days of July and January of each year, on the presentation and delivery at said bank of the coupons hereto severally subjoined.

"This bond is issued under and in pursuance of an order of the county court of Henry County in the State of Missouri, and in pursuance of and by authority of an act of the General Assembly of the State of Missouri, entitled 'An Act to incorporate the Tebo and Neosho Railroad Company,' approved Jan. 16, 1860, and of an act of the General Assembly of the State of Missouri, entitled 'An Act to aid in the building of branch railroads in the State of Missouri,' approved March 21, A.D. 1868."

The bond is duly signed, sealed, and attested, and the coupons attached are in the usual form.

The act of incorporation thus mentioned authorizes the company thereby created to " survey, mark, locate, construct, maintain, and operate a railroad, commencing at a point on the Pacific Railroad, between the west bank of the Lamine River, and Muddy Creek, in Pettis County, by the most direct and practical route, in a southerly or south-westerly direction, through Henry County; thence to some point on the State line, between the north-west corner of Jasper County and the south-east corner of McDonald County, . . . and to extend branch railroads into and through any counties that the directors may deem advisable."

It declares as applicable to the company certain sections of the act incorporating the Osage Valley and Southern Kansas Railroad Company, approved Nov. 21, 1857, among which is the fourteenth, providing that "It shall be lawful for the county court of any county in which any part of the route of said railroad or branch may be, or any county adjacent thereto, to subscribe to the stock of the company; and, for the stock subscribed in behalf of the county, may issue bonds of the county to raise the funds to pay the same, and to take proper steps to protect the interest and credit of the county court."

The following is an act of the General Assembly of Missouri, approved March 21, 1868 : —

"SECTION 1. Any railroad company in this State, authorized by law to build branches, and wishing to avail themselves of the provisions of this act, shall, by its board of directors, pass, and cause to be entered upon its records, a resolution setting forth such desire, and designating the name under which such branch shall be built, its point of intersection with its main line, and general course; a certified copy of which resolution shall be filed with the secretary of state, after which they shall be governed by the provisions of this act.

"SECT. 2. Whenever any such railroad company shall undertake the construction of a branch designated, as provided in the first section of this act, they shall receive donations or subscriptions to stock to aid in its construction in the name of such branch, which shall be expressed in the certificate of stock issued; the cost and expenses of constructing and operating such branch shall be kept separate and distinct from expenses on the main line. They may borrow money and issue bonds secured by mortgage on such branch road to aid in its construction, and, in general, may operate, lease, sell, or consolidate with any connecting road, distinct and separate from their main line, and in any other way may manage or dispose of such branch as by law they may be authorized, with reference to their main line, and separate therefrom.

"SECT. 3. Any branch road so constructed shall not be holden for any debt, lien, or liability of the main line, nor shall the main line be holden for any debt, lien, or liability of such branch. Any dividends of profits arising out of the business of such branch road shall be divided among the stockholders in said branch, and in all respects the interest of the stockholders in the branch shall be kept separate and distinct from the interests of the stockholders in the main line.

"SECT. 4. The holders of stock in any railroad company which was subscribed in aid of the construction of a branch road, according to the provisions of this act, shall have the same rights as other stockholders in the company in the choice of officers; but in all matters directly and specially affecting the interests of such branch road the stockholders in such branch shall control, and for such purposes the directors, under their by-laws, may, or on the petition of parties representing one-tenth of such stock shall, call a meeting of the stockholders in such branch, setting forth the object of such

meeting; and at any such meeting such stockholders may instruct the board of directors in all matters relating especially to their interests, and they shall be governed by such instructions, if not inconsistent with the laws of the State and the powers of such company.

"SECT. 5. This act shall be in force and take effect from and after its passage."

The " Clinton and Memphis Branch of the Tebo and Neosho Railroad " was organized and undertaken with the consent of the directors of the Tebo and Neosho Railroad Company.

On the 4th of August, 1870, the county court of the county of Henry, on "the application of the Clinton and Memphis Branch of the Tebo and Neosho Railroad for a subscription to the capital stock of said branch road from the county of Henry, to aid in the construction of said branch road," ordered and adjudged that the said county "do subscribe for and agree to take one thousand five hundred shares of the capital stock of the Clinton and Memphis Branch of the Tebo and Neosho Railroad, each share being of the denomination of $100, and amounting, in the aggregate, to the sum of $150,000, under and by virtue of the authority in the charter of the Tebo and Neosho Railroad Company contained, and under the act of the General Assembly of the State of Missouri, entitled ' An Act to aid the building of branch railroads in the State of Missouri,' approved March 21, 1868, and in accordance with the resolution and orders of the board of directors of said Tebo and Neosho Railroad Company, establishing said branch railroad company and authorizing subscriptions to the capital stock thereof, adopted on the sixth day of June, 1870, the said capital stock to be paid for by the issue and delivery to the committee appointed to construct said branch road of the coupon bonds of the county," of the foregoing tenor. The subscription was made on certain conditions as to the location of the branch railroad, and none of the bonds were to be delivered until the grading and masonry of the road within the limits of the county were let by contract to persons of whose responsibility the court should be satisfied. One Hillegas was appointed the agent of the county to subscribe the stock in accordance with

the terms of the order, and to cause the bonds to be issued and delivered.

Oct. 11, 1870, the Tebo and Neosho Railroad Company executed a deed, whereby it, with the consent of a majority of its stockholders, sold, conveyed, and transferred to the Missouri, Kansas, and Texas Railway Company " all its privileges, rights, powers, franchises, real estate, and other property, the whole or a part of which is in this State, excepting only such as belong to the extension of the Tebo and Neosho line north from Sedalia, *via* Boonville, Fayette, and Moberly, to the railroad bridge at West Quincy, declared July 2, 1869, certificate of which, dated July 3, 1869, was filed in the office of secretary of state, and doth consent to a merger of the same with the franchises, property, and rights of said party of the second part; and the said Missouri, Kansas, and Texas Railway Company, party of the second part, shall have, exercise, and enjoy all the rights, powers, privileges, and immunities of the original charter of the Tebo and Neosho Railroad Company, and of the several amendments thereto, in the same manner and to the same extent as has been heretofore exercised and enjoyed by the said Tebo and Neosho Railroad Company, party of the first part, or by the several shareholders in said company, whose stock shall be exchanged as herein provided, either or both; and the said party of the second part does hereby accept the terms and conditions of the within instrument."

On the 7th of November following, the county court made an order, which, after reciting that of Aug. 4, the subscription made by Hillegas, and the fact of the compliance by said branch road, with all the conditions precedent to the delivery of said bonds, concluded as follows : —

"Now, therefore, it is considered by the court that said bonds be signed by the presiding justice of this court, and attested by the clerk of this court, under the seal thereof, and the coupons signed by said clerk as directed in said order; and that said bonds, numbered from No. 1 to No. 150, inclusive, of the denomination of $1,000 each, and amounting in the aggregate to $150,000, signed and sealed as aforesaid, be delivered to the chairman of the committee of construction of said branch railroad, and that the clerk of this court take his receipt therefor."

The petition of the plaintiff is in the usual form.

The answer of the county alleges that the bonds were issued without authority of law; that they were not ordered to be issued, nor were they in fact issued, to the Tebo and Neosho Railroad Company, to the use and in the name of the Clinton and Memphis branch; that said branch never had any legal existence; that, if it did have such existence, it was under the act of March 21, 1868, and therefore the issue of the bonds was illegal, as the consent thereto of two-thirds of the qualified voters of the county was not first obtained; that prior to the issue of the bonds the Tebo and Neosho Company sold all its rights and franchises to the Missouri, Kansas, and Texas Railroad Company, which sale revoked the authority, if any existed, to issue said bonds; that after their issue and sale proceedings were instituted in the State court to enjoin the collection of the tax for the payment of either their principal or interest; and that all of these matters were known to the plaintiff when he brought his action.

The plaintiff demurred to the evidence offered by the county. There was nothing to show that, when he purchased the bonds, he had notice of the facts relied on in support of the answer. The court sustained the demurrer, and instructed the jury to find a verdict for him; which was done, and judgment rendered accordingly.

The county then sued out this writ of error.

*Mr. John F. Philips* and *Mr. James O. Broadhead* for the plaintiff in error.

*Mr. James Grant, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

Since the decision of this court in *County of Scotland* v. *Thomas,* 94 U. S. 682, little remains to be considered in this case. It is conceded that the charter of the Tebo and Neosho Railroad Company, passed Jan. 16, 1860, gave the power to establish a railroad through Henry County, and to extend branch railroads into and through any counties that the directors might deem advisable; and it was made lawful for the county court of any county in which any part of the route of said railroad or branches might be, or any county adjacent

thereto, to subscribe to the stock of the company, and for such stock to issue bonds of the county to raise funds to pay for the same. This charter being granted prior to the Constitution of Missouri, adopted in 1865, according to the settled law of the State did not become subject to the provision in that Constitution, which requires the assent of two-thirds of the lawful voters of a county to a subscription of stock in aid of the railroad.

But it is objected that the project of the branch road, in aid of which the stock was subscribed in this case, was undertaken as an independent enterprise under the act of March 21, 1868, and, consequently, that the constitutional provision applies to it. It is true that the branch in question was projected, and the organization for its construction was made, under the provisions of that act. It is necessary, therefore, to inquire whether branches of railroads thus projected are thereby made subject to the constitutional provision relied on; for the bonds sued on in this case show on their face that they were issued in pursuance of that act as well as under the authority of the original charter, and being made " to the use and in the name of the Clinton and Memphis Branch of the Tebo and Neosho Railroad, . . . to aid in building said branch railroad." The Supreme Court of Missouri has decided this question, holding that the constitutional provision does not apply to branch roads built under the act of 1868. *The State ex rel. the Attorney-General* v. *Green County*, 54 Mo. 540, is precisely in point. That was the case of a branch road authorized by the original charter of the Kansas City, &c. Railroad Company, but constructed as an independent interest under the act of 1868; and in that case, also, the original company had consolidated with the Hannibal and St. Joseph Railroad Company, before the subscription to the stock for the branch was made. The court said : " This branch road commences and ends in the same places designated for the branch road in the original charter. It proposes nothing but what was intended to be accomplished by the act creating it; and its union with another company is in name only; no new powers are granted to either the branch or the company with which it is consolidated, and no original powers are taken away. I see nothing that alters, affects, or changes

the power of the county court to subscribe the stock. I think the power existed when the subscription was made, the same as it did when the act of incorporation of 1857 was passed."

It is true, in that case, that the board of directors of the parent company, before it consolidated with the Hannibal and St. Joseph Railroad Company, and the latter company afterwards, passed resolutions authorizing the construction of the branch, and that this was not done in the present case; the branch in the present case being organized and undertaken only with the consent of the directors of the parent company. But, under the decisions of this court, the purchasers of the bonds were not bound to know whether or not the proceedings of the company were regular. The charter of the Tebo and Neosho company contained the power to construct the branch, and gave the county court power to subscribe stock for it; and the act of 1868 authorized such branch and stock to be an independent interest; and the bonds on their face simply showed that they were made to the parent company, "to the use and in the name of the Clinton and Memphis branch," "to aid in building said branch." The purchaser, therefore, was apprised by the law that power existed in the county court to issue such bonds, without any election of the people; and there was nothing on their face to show that they were not regularly issued. It was not incumbent on him to inquire whether the railroad company had pursued all the regular steps necessary to entitle it to receive the bonds. Its agents, that is, the agents of the branch road, had them for sale, and he had a right to presume that they were lawfully entitled to them.

The fact that before bonds were issued, but not before the subscription was made, the parent company sold and assigned a portion of its route, and all franchises connected therewith, to the Missouri, Kansas, and Texas Railroad Company, does not alter the case. So far as appears, the Tebo and Neosho company did not cease to exist. In the deed of sale it expressly reserves a very material portion of its franchises; namely, all those belonging to "the extension of the Tebo and Neosho line north from Sedalia, *via* Booneville, Fayette, and Moberly, to the railroad bridge at West Quincy, declared July 2, 1869, certificate of which, dated July 3, 1869, was filed in the office

of the secretary of state." But had the company ceased to exist, it would make no difference. Its franchises were not extinguished, but only transferred, and the subscription had been ordered before the sale took place. It is unnecessary to discuss this point further, as the grounds on which it rests were sufficiently considered in the case of Scotland County, already referred to.

In our judgment, the defence set up by the county was properly overruled, it not being shown that the plaintiff, when he purchased the bonds, had any knowledge or notice of the facts relied on.                                    *Judgment affirmed.*