QUINLAN *v.* GREEN COUNTY, KENTUCKY.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 213.   Argued February 27, 28, 1907.—Decided April 8, 1907.

Where a question certified by the Circuit Court of Appeals contains more than a single question or proposition of law it will not be answered by this court.

Where the qualified voters of the county vote for an issue of bonds for subscription to stock of a railroad on condition that the county be exonerated from a prior subscription authorized for another railroad, and thereafter the judge of the county court authorized by statute to make the subscription enters an order to that effect, receives the stock subscribed for, and issues the bonds, and nothing further is ever done in regard to the prior subscription, although no formal exoneration thereof was ever made or attempted, a *bona fide* purchaser before maturity of the bonds and coupons for value is entitled to assume in his purchase that the county had been fully exonerated from the prior subscription.

PLAINTIFF in error brought an action in the Circuit Court of

the United States for the Western District of Kentucky upon certain bonds and coupons purporting to have been issued by the defendant in error, one of the counties of the State of Kentucky. The following was the form of the bond:

"United States of America,
"County of Green, State of Kentucky.
"$500.00
"For the Cumberland and Ohio Railroad.

"Twenty years after date, the county of Green, in the State of Kentucky, will pay to the holder of this bond the sum of five hundred dollars, with interest thereon at the rate of six per cent per annum, payable semi-annually upon presentation of the proper coupons hereto attached, the principal and interest being payable at the Bank of America, in the city of New York.

"In testimony whereof, the judge of said county of Green has hereunto set his hand and affixed the seal of said county, on the first day of April, A. D. 1871, and caused the same to be attested by the county clerk, who has also signed the coupons hereto attached.

"(Green County Seal.)            T. R. BARNETT, *Judge.*
D. T. TOWLES, *Clerk.*"

The case was tried without a jury, and the court, after finding facts, rendered judgment for the defendant. The case then went to the Court of Appeals for the Sixth Circuit, and that court has certified here two questions of law upon which it desires instructions, with a statement of facts upon which the questions arise. In addition to the statement of facts we take into account the material parts of the charter of the Cumberland and Ohio Railroad Company, section 15 of which contains the following provisions:

"SEC. 15. That any city, town or county through which said proposed road shall pass is hereby authorized to subscribe stock in said railroad company in any amount any such city, town or county may desire; and the county court of any such

county is authorized to issue the bonds of their respective counties in such amount as the county court may direct; and the chairman and board of trustees, or mayor and aldermen of any town, and the mayor and aldermen or council of any city, are hereby authorized to issue the bonds of their respective towns or cities in like manner. All said bonds shall be payable to bearer, with coupons attached, bearing any rate of interest not exceeding six per cent per annum, payable semi-annually in the city of New York, payable at such times as they may designate, not exceeding thirty years from date; but before any such subscription on the part of any city, town or county shall be valid or binding on the same, the mayor and aldermen, or chairman and board of trustees of any town, the mayor and aldermen or council of any city, and the county court of any county, having jurisdiction, shall submit the question of any such subscription to the qualified voters of such city, town or county in which the proposed subscription is made, at such time or times as said chairman and board of trustees, or mayor and aldermen of any town, mayor and aldermen or council of any city, or the county court of any county, as aforesaid, may, by order, direct; and should a majority of the qualified voters voting at any such election vote in favor of subscribing said stock in said railroad company, it shall be the duty of such county court, trustees, or other authorities aforesaid, to make the subscription in the name of their respective cities, towns or counties, as the case may be, and proceed to have issued the bonds to the amount of such subscription as hereinbefore directed;

\* \* \* \* \* \* \* \*

"That, if preferred, the application herein authorized to be made to the county court may be made to the presiding judge of the county court; and all the powers herein given to the county court are hereby vested in the presiding judge of the county court. At all meetings of the stockholders for the purpose of electing officers, or any other purpose, the said town, cities, and counties may, by proxies duly authorized by the

authorities thereof,. cast a vote for each share so subscribed by said town, city, or county. . . ."

The charter gives to the Cumberland and Ohio Railroad "all the powers and privileges conferred upon the Louisville and Nashville Railroad Company by the laws of Kentucky for constructing and operating their said proposed railroad." The charter of the Louisville and Nashville Railroad Company provides " that said railroad company may receive subscriptions of stock to their company by individuals, towns, cities, counties, or other corporations, whether payable in money or other things, with such terms and time of payment, conditions annexed, and kind of payment that may be set forth in the subscription." The commissioners of the Cumberland and Ohio Railroad requested the County Court to submit to the qualified voters of the county the question whether the county should subscribe to $250,000 of the capital stock of the company, payable in bonds of the county, whereupon the judge of the county court on the 17th of June, 1869, ordered an election in the following terms:

"Whereas the commissioners of the Cumberland and Ohio Railroad Company, by virtue of the authority delegated to them by the charter of said company, have requested the County Court of Green County to order an election in said county of Green, and to submit to the qualified voters of said county the question whether said county court shall subscribe for and on behalf of said county two hundred and fifty thousand dollars to the capital stock of the Cumberland and Ohio Railroad Company, and payable in the bonds of said county, having twenty years to run, and bearing six per cent interest from date, and upon condition that said company shall locate and construct said railroad through said county of Green, and within one mile of the town of Greensburg, in said county, and shall expend the amount so subscribed within the limits of Green County; and also upon the further condition that said bonds shall not be issued or said county pay any part of the principal or interest on said amount subscribed to said Cumber-

land and Ohio Railroad Company, until said county of Green
is fully and completely exonerated from the payment of the
capital stock voted by said county, and aut!'orized to be sub-
scribed by said Green County Court to the Elizabethtown and
Tennessee Railroad, or any part of the interest thereon. It
is, therefore, ordered by the court that an election, by the quali-
fied voters of Green County, at the voting places in said county,
be held and conducted by the several officers, as prescribed by
law, for holding elections on the third day of July, 1869, to
vote on the question as to whether or not the said county court
shall, for and on behalf of said county, subscribe two hundred
and fifty thousand dollars to the capital stock of said Cumber-
land and Ohio Railroad, conditioned and to be paid as above
stated."

The election was duly held July 3, 1869, and the vote was in
the affirmative. During the year before this vote the voters
of the county had voted in favor of a proposition to subscribe
to the stock of the Elizabethtown and Tennessee Railroad,
and thereupon the county judge had ordered the clerk of his
court to make a subscription to the stock of the Elizabethtown
and Tennessee Railroad Company, "on the terms specified
in the order submitting the question to a vote." This was
the subscription from which Green County desired to be ex-
onerated before the Cumberland and Ohio Railroad bonds
should be issued, or any part of their principal or interest paid.
On June 3, 1870, the county judge entered an order reciting
the election at which the qualified voters had approved the
subscription to the capital stock of the Cumberland and Ohio
Railroad, and concluding: "Now, therefore, I, Thomas R.
Barnett, the presiding judge of the Green County Court, by
virtue of the authority in me vested by law, and to carry out
the wishes of said voters, do hereby subscribe for two hundred
and fifty thousand dollars of the capital stock of said Cumber-
land and Ohio Railroad Company for and on behalf of said
county of Green, which subscription is to be paid in the bonds
of said county as prescribed in said order of submission, and

this subscription is made with the conditions, set out in the order of this court, ordering said election and now of record in the office of this county."

At the April term, 1871, the Supreme Court of the State rendered a decision in the case of *Mercer* v. *Navigation Company*, 8 Bush, 300. It is argued that this decision shows that the subscription to the stock of the Elizabethtown and Tennessee Railroad was void. However that may be, at a time which does not distinctly appear, but later than that decision, the judge of the County Court issued and delivered to the Cumberland and Ohio Railroad Company bonds of Green County to a small amount. On August 15, 1872, the judge in a formal order, reciting that application had been made for the issue of the balance of the bonds, directed that, "the court being sufficiently advised," they be signed and issued. Thereupon certificates of 2,500 shares of that stock of the par value of $100 per share were delivered to Green County, which has since held and owned them. It was conceded at the argument that the county had made payment of interest on the bonds thus issued to the Cumberland and Ohio Railroad. No formal or express exoneration of said county from the payment of the subscription to the stock of the Elizabethtown and Tennessee Railroad was ever made or attempted, but nothing further has, up to this date, ever been done in respect to it, and neither bonds by the county nor stock by the said last-named railroad company have ever issued or delivered in execution of said orders or under the terms of said subscription. The proceeds of $150,000 of the bonds were expended within Green County in the partial construction of five miles of the road to Greensburg. This five miles was completed by a lessee at its own expense. Nothing else has been done within the county.

The plaintiff is the *bona fide* holder for value of the bonds and coupons in suit, but had notice that the railroad had not been laid further than Greensburg, and therefore did not extend "through" the county.

The questions certified by the Circuit Court of Appeals are:

"1st. Do the facts found by the Circuit Court conclude or ·estop the county from denying liability to the plaintiff upon the bonds and coupons in suit, by reason of non-compliance with the terms and conditions imposed by the favorable vote of the county authorizing a subscription to the stock of ·the Cumberland and Ohio Railroad Company and the issuance of bonds in payment therefor? or, if ·this question should be deemed too ·broad, then,

."2d. Assuming the facts to be as found was a *bona fide* purchaser, before maturity of these bonds and coupons for value, entitled to assume in his purchase that Green County had before their issuance been 'fully and completely exonerated· from the payment of the capital stock subscribed for by the County Court of said county for and in behalf of said county to the Elizabethtown and Tennessee Railroad Company?' "

*Mr. Edmund F. Trabue* and *Mr. George DuRelle,* with whom *Mr. John J. McHenry, Mr. John C. Doolan* and *Mr. Attilla Cox, Jr.,* were on the brief, for Mary Amis Quinlan:

It is demonstrable not only that the county was completely exonerated upon the issuance of the bonds, but that it was so understood by the County Court which withheld the issuance thereof until such exoneration.

Not only is this true, but the County Court was the judge of the exoneration and held the county to be exonerated. *Provident &c. Co.* v. *Mercer Co.,* 170 U. S. 593.

Although May 20, 1868, the Green County Court made a void order directing its clerk to make a subscription to the stock of the Elizabethtown and Tennessee Railroad Company, it avoided all the points of invalidity thereof in the orders of , June 17, 1869, and June 3, 1870, and thoroughly understood wherein the invalidity of the first order lay, and what exoneration was necessary for the county's safety. Accordingly, the County Court determined that it was exonerated, and delivered

the bonds which were not directed to be printed until October 12, 1871, as above indicated.

*Mr. Ernest MacPherson*, with whom *Mr. John W. Lewis* was on the brief, for Green County:

The purchaser of municipal bonds is bound to take notice of the law under which the obligations are issued. This is the settled law in the Federal courts. *Barnett* v. *Denison*, 145 U. S. 139.

The purchaser of the papers herein involved knew that by the terms of the charter of the Cumberland and Ohio Railroad conditional subscriptions to its corporate stock were valid.

At its summer term, 1871, before the bonds herein sued on were ever issued, or even printed, the Kentucky Court of Appeals construed the charter (statute) of the Cumberland and Ohio Railroad Company and held valid conditional subscriptions to its stock, and that subscribers might provide for any sort of payment they might choose. *Shelby County Court* v. *C. & O. R. R. Co.*, 8 Bush, 216.

In the absence of a recital in a municipal bond or coupon that the conditions essential to its validity have been performed, it is open to the municipality to show the non-performance of the conditions. *Citizens' Saving Association* v. *Perry County*, 156 U. S. 701; *Town of Coloma* v. *Eaves*, 92 U. S. 481; *Prov. Life & Trust Co.* v. *Mercer Co.*, 170 U. S. 593.

In the alleged bonds of Green County, there being no recitals, and no reference to the law or authority under which they were issued, it was the duty of every person dealing therein to look to the records of the Green County Court. *Crow* v. *Oxford*, 119 U. S. 222.

If the second question be intended to ask whether the bare fact that the bonds were signed and delivered by the county judge was a decision that there had been a full and complete exoneration from the liability on the subscription to the Elizabethtown and Tennessee Railroad, it should be answered in the negative. It has already been shown that "when the law

confers no authority to issue the bonds in question, the mere fact of their issue can not bind the town to pay them, even to a purchaser before maturity and for value." *Hopper* v. *Covington*, 118 U. S. 148.

The fact that coupons for interest were for a few years paid, in no legal way estops the county to show the invalidity of the bonds or coupons, or the failure of the road to fulfill the conditions.

The record does not show that Green County paid interest on the bonds illegally issued for two years by the same officials who issued the bonds, and also failed to incorporate in the bonds the conditions required by the contract, although it so appeared in the *Shortell case*. *Wilkes County* v. *Coler*, 190 U. S. 113.

MR. JUSTICE MOODY, after making the foregoing statement of·facts, delivered the opinion of the court.

The first question certified is thought by a majority of the court to contain more than a single question or proposition of law, and for that reason it is not answered.

The second question deals with the exoneration from subscription to the stock of the Elizabethtown and Tennessee Railroad Company which was made by the vote of the county a condition to the issue of the bonds, and we confine our consideration to that question and the facts relevant to it.

There is no doubt of the power of the defendant to issue the bonds. The legislature of Kentucky gave it in plain terms, upon the condition that its exercise receive the approval of the qualified voters. That approval was given upon the condition imposed by the vote that the bonds should not be issued before the county had been exonerated from a subscription to the stock of another railroad company. The law gave the county the right to impose conditions. This particular condition is a condition precedent to the lawful issue of the bonds, although it must not be understood that this statement applies to the other so-called conditions expressed in the vote.

Of them nothing is intended to be said. If there had been a recital in the bonds which imported that the condition had been performed, that would have been conclusive in favor of a *bona fide* holder. *Provident Trust Co.* v. *Mercer County,* 170 U. S. 593; *Gunnison County Commissioners* v. *Rollins,* 173 U. S. 255. But there was no such recital in the body of these bonds, and the words of the heading, "For the Cumberland and Ohio Railroad," cannot be interpreted as such without going beyond the decided cases, which themselves have gone far. In the absence of a recital it is open to the defendant to show that the condition which it had a right to impose and did impose by the vote of its electors had not been complied with. *Citizens' Savings Association* v. *Perry County,* 156 U. S. 692. In other words, in the absence of a recital, the performance of the condition is not conclusively presumed.

But by the terms of the law it was the duty of the judge of the County Court, in whom the powers of the court were vested, to issue the bonds. After a favorable vote has been had in an election called by the court, the law provides that "it shall be the duty of said County Court . . . to make the subscription in the name of their . . . counties . . . and proceed to have issued the bonds to the amount of such subscription, as hereinbefore directed." This clearly placed upon the judge the duty and responsibility of ascertaining and determining whether the condition of the issue of the bonds had been complied with. *Coloma* v. *Eaves,* 92 U. S. 484.

If he had issued the bonds and they had contained in them recitals which fairly imported a compliance with the condition upon the happening of which their issue was authorized, they would have gone into the hands of innocent holders with a conclusive presumption that the condition had been performed. This principle has been announced by repeated decisions of this court and needs no other citations to support it than those already made. Without such recital the presumption is, as has been shown, not conclusive. The further question arises,

therefore, whether there is any presumption at all of the performance of the condition from the facts of subscription and issue. In the first case, dealing with this question (*Knox County* v. *Aspinwall*, 21 How. 539), it was said that a purchaser of such bonds had the right to assume that the condition of their issue had been complied with, merely from the facts of the subscription and issue. But in this case there was a recital, and subsequent cases have limited the adjudication to the precise point necessarily decided. *Citizens' Savings Association* v. *Perry County*, *ub. sup.* In *Supervisors* v. *Schenck*, 5 Wall. 772, it was said *obiter* by Mr. Justice Clifford, speaking of bonds of the kind under consideration, "the *bona fide* holder has a right to presume they were issued under the circumstances which give the requisite authority." The same *dictum* was in substance repeated by the same justice in *Lexington* v. *Butler*, 14 Wall. 282–296.

In *Pendleton County* v. *Amy*, 13 Wall. 297, it appeared that the county of Pendleton had issued bonds in aid of a railroad company. An act of the legislature gave the county the authority to issue the bonds, provided a majority of the real estate owners of the county should so vote. One of the pleas of the defendant in an action on the bonds was that they had never been authorized by the vote prescribed in the act which gave the power to issue them. This plea was demurred to, and the court passed upon the question thus raised. Mr. Justice Strong, in delivering the opinion of the court, said:

"If the right to subscribe be made dependent upon the result of a popular vote, the officers of the county must first determine whether the vote had been taken as directed by law, and what the vote was. When, therefore, they make a subscription, and issue county bonds in payment, it may fairly be presumed, in favor of an innocent purchaser of the bonds, that the condition which the law attaches to the exercise of the power, has been fulfilled. To issue the bonds without the fulfillment of the precedent conditions would be a misdemeanor, and it is to be presumed that public officers act rightly. We do

not say this is a conclusive presumption in all cases, but it has more than once been decided that a county may be estopped against asserting that the conditions attached to a grant of power were not fulfilled."

In this case there was no recital in the bond. It appeared by the pleadings that the bonds had been exchanged for the stock of the railroad company which 'was retained, and the decision was based upon the ground that the retention of the stock created an estoppel.

In the case of *Coloma* v. *Eaves*, 92 U. S. 484, the opinion of the court lends some countenance to the broad principle stated in *Knox* v. *Aspinwall*, but Mr. Justice Bradley, in a concurring opinion, said:

"I dissent from the opinion of the court in this case, so far as it may be construed to reaffirm the first point asserted in the case of *Knox County* v. *Aspinwall*, to wit, that the mere execution of a bond by officers charged with the duty of ascertaining whether a condition precedent has been performed is conclusive proof of its performance. If, when the law requires a vote of taxpayers before bonds can be issued, the supervisor of a township, or the judge of probate of a county, or other officer or magistrate, is the officer designated to ascertain whether such vote has been given, and is also the proper officer to execute, and who does execute, the bonds, and if the bonds themselves contain a statement or recital that such vote has been given, then the *bona fide* purchaser of the bonds need go back no farther. He has a right to rely on the statement as a determination of the question. But a mere execution and issue of the bonds without such recital is not, in my judgment, conclusive. It may be *prima facie* sufficient, but the contrary may be shown. This seems to me to be the true distinction to be taken on this subject; and I do not think that the contrary has ever been decided by this court. "

These cases left it uncertain whether the court would give to the facts of subscription to stock and issue of bonds in payment therefor by officers charged with the duty of ascertaining

whether conditions precedent had been complied with, the same conclusive effect as to the validity of the bonds which would exist when to those facts was added a recital in the bonds themselves. But the tendency, observable in the earlier cases, to deny to bonds in the hands of an innocent holder any other defense than a want of power of the maker was arrested by the cases of *Buchanan* v. *Litchfield*, 102 U. S. 278, and *Citizens' Savings Association* v. *Perry County, ub. sup.*, which held that the mere facts of the subscription to stock and issue of bonds containing no recital left it open to the obligor to show that a condition precedent had not been fulfilled. But these cases in no way conflict with the view expressed by Mr. Justice Strong in *Pendleton County* v. *Amy*, and by Mr. Justice Bradley in *Coloma* v. *Eaves*, that a presumption arises from the mere fact of subscription and issue, though not a conclusive one. Independent of authority such a presumption exists and is but an instance of the broader presumption that officers charged with the performance of a public duty perform it correctly. In the case at bar the judge of the County Court was charged with the duty of issuing the bonds upon the performance of the condition precedent. That condition was that the county should be "fully and completely exonerated from the payment of the capital stock voted by said county and authorized to be subscribed by said Green County Court to the Elizabethtown and Tennessee Railroad." The performance of that condition did not necessarily require any formal release or the execution of any paper whatever. It was completely fulfilled, if from any circumstance it should appear that the county had been effectively relieved from any liability on account of the vote in aid of the Elizabethtown and Tennessee Railroad. It would be impossible for any purchaser of the bonds to ascertain whether this condition had been complied with, except by an inquiry which would naturally be made of the judge himself. The judge determined that it had been complied with, and the fact that for thirty-eight years no one has made any claim against the county on account of its sup-

posed liability to subscribe to the stock of the Elizabethtown and Tennessee Railroad shows conclusively that he was right.

Construing the second question to inquire not whether there is conclusive presumption, but whether on the facts found there is any presumption at all that the county had been exonerated from its former subscription to another railroad, we answer it

. *Yes.*