5 F.(2d)—40

## ROAD DIST. NO. 4 of SHELBY COUNTY, TEX., v. HOME BANK & TRUST CO.

(Circuit Court of Appeals, Fifth Circuit. March 24, 1925. Rehearing Denied April 15, 1925.)

No. 4393.

Municipal corporations ⊚⇒942 — Road district bonds enforceable in hands of bona fide purchaser.

In view of Rev. St. Tex. arts. 619, 625, 632, 633, 2276, bonds of road district, duly authorized to be issued, are enforceable by purchasers for value without actual notice of illegality, even though record of commissioners' court showed that they were unlawfully sold on installment contract, and that original purchaser dishonestly acquired possession of them and appropriated proceeds.

Appeal from the District Court of the United States for the Eastern District of Texas; W. Lee Estes, Judge.

Action by the Home Bank & Trust Company against Road District No. 4 of Shelby County, Tex. Judgment for plaintiff, and defendant brings error. Affirmed.

J. M. Sanders and E. H. Carter, both of Center, Tex., and Oliver J. Todd, of Beaumont, Tex., for appellant.

C. L. Carter and Homer L. Bruce, both of Houston, Tex., opposed.

Before WALKER and BRYAN, Circuit Judges, and CLAYTON, District Judge.

CLAYTON, District Judge. This is an action by the Home Bank & Trust Company, an Illinois corporation, for the principal amount of certain described bonds and the coupons of other bonds of the same series, issued by the defendant August 11, 1919.

The defense, in its various aspects, was that (1) the bonds and coupons were void, because they were never lawfully delivered by the defendant district or by Shelby county to the plaintiff or its predecessors in title; (2) invalid, because the bonds and coupons were not sold to the highest bidder for cash, as required by the statute; (3) neither the title to the bonds and coupons nor the lawful possession thereof ever passed out of the district; and (4) the bonds and coupons unlawfully passed out of the possession of the commissioners' court of Shelby county and the road district, without having been paid for as required by the statute, and are therefore without consideration.

The plaintiff set up that it and its predecessors in title were bona fide purchasers of the bonds and coupons for value without notice of any defect or irregularity in their is-

suance, delivery, or promulgation, and that therefore such obligations are binding upon the district.

It was established on the trial in the District Court and admitted by the plaintiff, the appellee here, in its brief, that the minutes of the commissioners' court showed the bonds and coupons were not sold by the commissioners' court for cash, as required by the statute, but were disposed of under an unlawful agreement between the commissioners' court and Twing, whereby Twing received the bonds under an agreement to sell and to pay for them in installments. There was convincing evidence that Twing exceeded the agreement and dishonestly got possession of the bonds. Twing sold the bonds in open market to plaintiff's predecessors, but never paid the county or road district anything.

On the trial it was shown that the bonds were purchased by the plaintiff's immediate predecessors in title at a considerable discount, some of them having been bought for as low as 72 cents on the dollar, but that they were, in each instance of purchase, bought by plaintiff's predecessors in open market, and the price paid for them was their market value at the time of their purchase; and it was also shown that neither the plaintiff nor those of whom it purchased the bonds had any knowledge of any defect or irregularity in the original sale and delivery of the bonds, or of the agreement between the commissioners' court and Twing.

It was further shown that, after the bonds in question had been approved by the Attorney General of Texas and registered by the comptroller, they were returned to the commissioners' court, which was vested with the responsibility of making a sale thereof and delivery to the purchaser in the method provided for by the Texas statutes. The certificate of the Attorney General declared that (1) road district No. 4 was legally established at the time of the order of the commissioners' court; (2) the taxable values of said district, according to the assessments last approved before the bonds were issued, amounted to $1,812,230; (3) the debt of said district, for the purpose of which the bonds were issued, was increased thereby $300,000; (4) the order authorizing said bonds was in proper form and legally passed; (5) a tax of 1.49 cents on each $100 valuation of taxable property in said district was legally levied to pay interest on said bonds and to create a sinking fund to provide for their payment at maturity, and said tax was sufficient for the purpose named; (6) the bonds were in proper form and in accordance with the order authorizing their issuance, and that all the requirements of law under which they were issued had been complied with; and (7) in his judgment that said bonds were issued in conformity with the Constitution and laws of Texas and were valid and binding obligations upon road district No. 4 of Shelby county, Tex.

At the conclusion of the testimony the court directed a verdict in favor of the plaintiff for the amount sued for, and judgment was entered. The defendant, appellant here, reserved exceptions to the rulings and charge of the court, and now submits the case upon appropriate assignments of error.

The Texas statute (article 619) relating to the county and municipal bonds referred to in article 633 of the Texas Revised Statutes, provides that "any county, city, or town in the state of Texas, desiring to issue bonds as authorized by the Constitution and laws of this state, shall, before such bonds are offered for sale, forward to the Attorney General the bonds to be issued, a certified copy of the order, or ordinance, levying the tax to pay interest and provide a sinking fund, with a statement of the total bonded indebtedness of such county, city, or town, including the series of bonds proposed, and the assessed value of property for purposes of taxation, as shown by the last official assessment, of such county, city or town, together with such other information as the Attorney General may require; whereupon it shall be the duty of the Attorney General to carefully examine said bonds in connection with the facts and the Constitution and laws on the subject of the execution of such bonds, and if, as the result of such examination, the Attorney General shall find that such bonds were issued in conformity with the Constitution and laws, and that they are valid and binding obligations upon such county, city, or town, by which they are executed, he shall so officially certify."

And the other pertinent provisions of the Texas statutes are that:

(1) "Such bonds, when so issued, shall continue in the custody of, and under the control of the commissioners' court of the county in which they were issued, and shall be by said court sold to the highest and best bidder, for cash, either in whole or in parcels, at not less than their par value, and the purchase money therefor shall be placed in the county treasury of such county to the credit of the available road fund of such county, or of such political subdivision or

defined district of such county, as the case may be." Article 632.

(2) "Such bonds, after receiving the certificate of the Attorney General, and having been registered in the comptroller's office, * * * shall thereafter be held, in every action, * * * in which their validity is * * * brought into question, prima facie valid and binding obligations. And in every action brought to enforce collection of such bonds, the certificate of the Attorney General * * * shall be admitted and received in evidence of the validity of such bonds, together with the coupons thereto attached: Provided, the only defense which can be offered against the validity of said bonds shall be for forgery or fraud. But this article shall not be construed to give validity to any such bonds as may be issued in excess of the limit fixed by the Constitution, or contrary to its provisions, but all such bonds shall, to the extent of such excess, be held void." Article 625.

And (3) "the court shall cause to be procured and kept in the clerk's office suitable books in which shall be recorded the proceedings of each term of the court, which record shall be read over and signed by the county judge, or the member of the court presiding, at the end of each term and attested by the clerk." Article 2276.

It was not, and is not now, questioned that the plaintiff in error was duly authorized to issue the bonds, with coupons, sued on. Liability thereon is denied solely on the ground that they were illegally sold and delivered, in that they were not sold at par for cash, and it is insisted that the defendant in error was chargeable with notice of the illegality by reason of the facts in that regard disclosed by the minutes of the body authorized to issue the bonds.

The defendant in error has cited numerous decisions of federal courts, expounding the general commercial law governing negotiable instruments, in cases more or less analogous to the one at bar. Some of them are Independent School Dist. v. Hall, 113 U. S. 135, 140, 5 S. Ct. 371, 28 L. Ed. 954; Manufacturing Co. v. Bradley, 105 U. S. 180, 26 L. Ed. 1034; Goodman v. Simonds, 61 How. 343, 15 L. Ed. 934; Bernards Tp. v. Morrison, 133 U. S. 523, 10 S. Ct. 333, 33 L. Ed. 726; Supervisors v. Schenck, 5 Wall. 772, 18 L. Ed. 556; Gelpcke v. Dubuque, 1 Wall. 175, 17 L. Ed. 520; Smith v. Sac County, 11 Wall. 139, 20 L. Ed. 102; Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857; 1 Daniel on Neg. Instruments, §§ 823, 838, 840; City of Lexington v. Butler, 14 Wall.

282, 20 L. Ed. 809; Myer v. Muscatine, 1 Wall. 384, 17 L. Ed. 564; County of Henry v. Nicolay, 95 U. S. 619, 24 L. Ed. 394; Pompton v. Cooper Union, 101 U. S. 196, 25 L. Ed. 803; Montclair v. Ramsdell, 107 U. S. 147, 2 S. Ct. 391, 27 L. Ed. 431; Scotland Co. v. Hill, 132 U. S. 107, 10 S. Ct. 26, 33 L. Ed. 261; Collins v. Gilbert, 94 U. S. 753, 24 L. Ed. 170; Brown v. Spofford, 95 U. S. 476, 24 L. Ed. 508; De Esterre v. City of New York, 104 F. 605; Quinlan v. Green Co., 205 U. S. 410, 419, 27 S. Ct. 505, 51 L. Ed. 860; Presidio County v. Noel-Young Bond Co., 212 U. S. 58, 65, 29 S. Ct. 237, 53 L. Ed. 402. None of them, to say the least, are in conflict with the conclusion hereinafter announced.

The Texas decisions are to the effect that a purchaser of such bonds and coupons as are here sued on, after they are issued and delivered, is not chargeable with notice of entries in issuer's minutes showing the manner in which the bonds were delivered or disposed of, and that though, because of illegality in the original sale or delivery of the bonds, they were unenforceable in the hands of the original holder, such illegality does not render them unenforceable by innocent purchasers for value. In Mitchell County v. Bank, 91 Tex. 361, 43 S. W. 880, it was decided that county bonds, the issuance of which was duly authorized, were enforceable in favor of the holder, who paid value for them without actual notice that they were sold for an illegal purpose, notwithstanding the record of the order under which they were sold showed that the proceeds of the sale were to be applied to an unauthorized use. The following is an excerpt from the opinion in the case:

"It is contended by the county that the purchaser of these four bonds was required to take notice of the order directing the clerk to issue them and prescribing the disposition of the proceeds. But we consider the latter order as simply a direction to the officer of the county as to the manner in which the bonds should be disposed of and the funds applied, that it does not constitute the source of power or authority for issuing the bonds, and the purchaser was not required to know the contents of that order."

And in the very recent case of American Surety Co. of N. Y. v. Hill County, 267 S. W. 265, it was decided by the Commission of Appeals of Texas that illegality in the sale by a county of its road bonds, which it was authorized to issue, did not affect the enforceability of such bonds in the hands of innocent purchasers. Those who took part

in getting such bonds from the county authorities without paying for them as required by law were held liable for the par value of them, the evidence in the case not excluding the inference that the bonds were in the hands of innocent purchasers. In the opinion rendered in that case it was distinctly recognized that, though the bonds were unenforceable while in the hands of the original holders, the illegality of the transaction by which the bonds passed from the possession of the issuing body did not affect the legality of them in the hands of innocent purchasers.

Under the above-cited Texas decisions, bonds of municipalities or other public subdivisions of the state of Texas which were duly authorized to be issued are enforceable by purchasers for value without actual notice of illegality in the transaction by which the original holder acquired them; and this is so, though a record of the issuing body shows that in the sale or disposition of the bonds requirements of law as to price and terms of sale were not complied with. We are of opinion that this court, in passing on the question presented, should give controlling effect to such decisions as to liability under bonds provided for by Texas statutes. It follows that the court did not err in ruling to that effect, and on the evidence the plaintiff was clearly entitled to recover. Therefore it was the duty of the court to so instruct the jury. Barrett v. Virginia Ry. Co., 250 U. S. 473, 476, 39 S. Ct. 540, 63 L. Ed. 1092.

The record does not disclose any error. Consequently the judgment is affirmed.