BOARD OF EDUCATION OF VILLAGE OF ESTANCIA, SCHOOL DIST. NO. 7 OF TORRANCE COUNTY, N. M., v. WOODMEN OF THE WORLD.

No. 1159.

Circuit Court of Appeals, Tenth Circuit.
April 10, 1935.

W. C. Reid, of Albuquerque, N. Mex., and Fred H. Ayers, of Estancia, N. Mex. (Reid & Iden, of Albuquerque, N. Mex., on the brief), for appellant.

Carl H. Gilbert, of Santa Fé, N. Mex. (John L. Schweigert, of Denver, Colo., and M. W. Hamilton, of Santa Fé, N. Mex., on the brief), for appellee.

Before LEWIS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

McDERMOTT, Circuit Judge.

Plaintiff below—appellee here—brought this action at law upon bonds issued by appellant. After issue joined, the cause was tried to the court without a jury. Judgment went for plaintiff. The bill of exceptions contains stipulations of evidentiary facts. The trial court made special findings, among them that the facts stipulated are true; that except as so stipulated, allegations of new matter in the answer are

not true; that allegations in the reply are true; that plaintiff is a bona fide purchaser for value of the bonds sued on; that the bonds were legally executed and issued; that defendant is estopped by the recitals in the bonds and the bond transcript from questioning the validity of the bonds; and that the United States Bond Company was the agent of defendant in all matters connected with the issuance and sale of the bonds.

█ The bill of exceptions containing no exception to any ruling in the progress of the trial, our review is confined to the question whether the facts specially found support the judgment. 28 USCA § 875; Kansas City Life Insurance Co. v. Shirk (C. C. A. 10) 50 F.(2d) 1046; Mittry Bros. Const. Co. v. United States (C. C. A. 9) 75 F.(2d) 79.

On July 1, 1920, defendant issued $22,-900 six per cent bonds due in 1940, optional in 1930. These are stipulated to have been valid outstanding obligations in 1930. At the suggestion of the United States Bond Company of Denver, defendant decided to refund this issue at a lower rate of interest as authorized by sections 90-1101 to 90-1112, New Mex. Comp. Stat. 1929. Section 90-1106 provided two methods for the operation, an exchange of the callable bonds for the refunding bonds, or a sale of the refunding bonds, the proceeds to be used only for payment of called bonds. The board decided to use the exchange method, although it would seem that the holder of a called bond might decline to exchange and demand the cash, in which event resort must need be had to the power to sell the new bonds to pay off the old. At any rate, defendant contracted to deliver the refunding bonds to the United States Bond Company, with a transcript, the United States Bond Company "agreeing to exchange bond for bond at our office free of exchange charges." The refunding bond resolution, adopted March 25, 1930, called for an exchange of bonds "dollar for dollar," and provided that the new bonds should not be issued until the outstanding bonds were called in and canceled. On June 30, 1930, the defendant, by its three officers and over its seal, made a formal certificate that on June 5, 1930, they executed the refunding bonds dated July 1, 1930, and that on June 30, 1930, "they delivered said executed bonds to United States Bond Company of Denver, Colorado, receiving in exchange therefor bonds of School District

No. 7, of Torrance County, New Mexico, in the sum of Twenty-two Thousand Nine Hundred Dollars ($22,900), dated July 1, 1920, optional July 1st, 1930, and due July 1st, 1940, bearing interest at the rate of six per centum (6%) per annum; that such exchange was made dollar for dollar in such manner that the total outstanding indebtedness of said School District No. 7, was not increased and that after such change said bonds dated July 1, 1920, were canceled and destroyed."

The transcript was presented to the State Tax Commission, as provided by the statute, and the bonds approved. The bonds were sent to the United States Bond Company to effectuate the exchange, the certificate in the transcript that the exchange had already been effected and the bonds destroyed being false. The Bond Company effected an exchange for $8,000 of the called bonds which were sent to defendant. To secure defendant in the matter of the exchange of the balance, the Bond Company pledged with defendant $14,000 of securities issued by another school district, the value of which is problematical.

Plaintiff bought $21,000 of the refunding bonds from the United States Bond Company at a premium, relying upon the transcript and opinion of bond counsel. The Bond Company defaulted, and defendant has $14,500 of the refunded issue outstanding and all of the refunding issue. None of the refunded bonds have been destroyed, and save for the certificate in the transcript, no record of such destruction was made. The bond registry of the 1920 issue carries the notation "This issue refunded July 1, 1930," and refers to the record of the refunding issue.

The bonds sued on carry the usual recital that all things required to exist or be done prior to and in the issuance of the bonds to render them valid obligations, exist and have been done. Plaintiff concededly is a holder for value. Its position is that defendant is now estopped, by this recital and the certificate in the transcript, to deny that the exchange had not been effectuated and the refunded bonds destroyed. Defendant asserts that plaintiff had no right to rely upon such recital and certificate when the statute, hereafter quoted, requires that a public record be made of the facts so certified.

█ The rule has long been established that where a municipal corporation has lawful authority to issue bonds if certain facts

exist or certain things are done, and the existence of such facts or the doing of such things is certified by the officers to whom the law intrusts the power, and upon whom it imposes the duty, to ascertain, determine, and certify this fact before or at the time of issuing the bonds, such certificate estops the municipality, as against a bona fide purchaser of the bonds, from proving its falsity to defeat them. Town of Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579; Buchanan v. Litchfield, 102 U. S. 278, 26 L. Ed. 138; Board of Commissioners of Gunnison County v. E. H. Rollins & Sons, 173 U. S. 255, 19 S. Ct. 390, 43 L. Ed. 689.

The rule was thus stated by our court in Board of Education of Town of Carmen, Okl., v. James (C. C. A.) 49 F.(2d) 91; City of Shidler v. H. C. Speer & Sons Co. (C. C. A.) 62 F.(2d) 544; Divide Creek Irr. Dist. v. Hollingsworth (C. C. A.) 72 F.(2d) 859, 864. For additional authorities, see Town of Aurora v. Gates (C. C. A. 8) 208 F. 101, L. R. A. 1915A, 910, and note 916, and Brown v. Ingalls Township (C. C. A. 8) 86 F. 261.

■ The rule, by its terms, has no application where there is no power to issue bonds, Parkersburg v. Brown, 106 U. S. 487, 1 S. Ct. 442, 27 L. Ed. 238; National Life Ins. Co. v. Board of Education (C. C. A. 8) 62 F. 778; nor can there be an estoppel where the face of the bonds discloses the recitals to be untrue. Lake County v. Graham, 130 U. S. 674, 9 S. Ct. 654, 32 L. Ed. 1065; Dixon County v. Field, 111 U. S. 83, 4 S. Ct. 315, 28 L. Ed. 360; Board of Education of Town of Carmen, Okl., v. James, supra. The reason for the rule excludes cases where the statute requires a public record to be made of the condition precedent, for such statute belies the premise that the officers were empowered to certify to the performance of such conditions. So, in Sutliff v. Board of County Commissioners of Lake County, 147 U. S. 230, 13 S. Ct. 318, 320, 37 L. Ed. 145, the rule was declared, "But if the statute expressly requires those facts to be made a matter of public record, open to the inspection of every one, there can be no implication that it was intended to leave that matter to be determined and concluded, contrary to the facts so recorded, by the officers charged with the duty of issuing the bonds."

■ By the language as well as the reason for these rules, they apply only to conditions required to exist or things required to be done before or concurrent with the issuance of the bonds. Manifestly bonds, valid when issued and sold, cannot be defeated by failure of municipal authorities to do their duty with respect to things to be done or records to be made after the bonds have been issued. With these rules in mind, we turn to the statutes under which these bonds were issued:

Section 90-1106, New Mex. Comp. Stat. 1929, provides:

"*Sale or exchange.* All such refunding bonds may be exchanged dollar for dollar for the bonds to be refunded, or they may be sold as directed by the governing body, and the proceeds thereof shall be applied only to the purpose for which said refunding bonds were issued. Such refunding bonds shall not be issued until the outstanding bonds to be refunded have been called in and cancelled in an amount equal to or in excess of the refunding bonds to be issued; and all accrued interest on any such bonds to be refunded shall be paid before such refunding bonds are issued."

Section 90-1107 provides for a record of the bonds issued; section 90-1108 provides that refunding bonds paid and retired shall be burned "by the governing body" and a record thereof made. Section 90-1109 then provides:

"*Record and destruction of surrendered bonds.* Upon the surrender of any bonds refunded under the provisions of this act, there shall be entered on the records of the governing body to whom surrendered the fact of such surrender and the number, amount, date and character of the bonds so surrendered; and such bonds shall be destroyed by such governing body and the fact of such destruction shall be likewise entered on such record."

Appellant contends that these sections require that the refunded bonds must be canceled, a record of the cancellation made, the bonds destroyed, and a record thereof made, before the refunding bonds are issued. With that view we are not in accord. The statute provides four steps to be taken by defendant with regard to the called bonds: (1) Called in and canceled, (2) Record of such cancellation, (3) Destruction, and (4) Record of the destruction. The last three steps are covered by section 90-1109 which is the third section after the section (90-1106) authorizing the sale or exchange of the refunding bonds. The arrangement of the entire statute is chronological. More significant still is the fact that section 90-1106 authorizing sale or exchange makes

step (1) a condition precedent to issue but does not make steps (2), (3), or (4), conditions precedent. To accede to appellant's argument, we must rewrite section 90-1106, by adding thereto the words "nor until a record has been made of the bonds so called and canceled, and such bonds have been destroyed and a record of such destruction made."

The section authorizing the sale or exchange of the bonds does not prohibit their issue until such records have been made. They may be issued when the called bonds have been canceled; it was the duty of the officers to cancel the bonds called in, and since such cancellation was essential to the validity of the new issue, they were empowered to certify to such fact. They have so certified; plaintiff purchased in reliance on that certificate, and the defendant is now estopped to assert its falsity.

While the statute discloses a clear and proper intent to safeguard a municipality from just such a situation as here exists—two bond issues outstanding for one indebtedness—the primary intent of the statute was to enable municipalities to refund outstanding bonds. Except for that intent, the statute never would have been enacted. It is our duty, if ambiguity there is, to keep in mind the purpose and design of a statute, and it should be construed, if reasonably possible, to effect its purpose and object. Town of Clayton v. Colorado & S. Ry. Co. (C. C. A. 10) 51 F.(2d) 977, 979, 82 A. L. R. 417. The legislature intended a workable scheme; and it would have been quite unworkable—at least on an exchange basis—if the old bonds must be burned and a record thereof made before the new ones were issued. It may be feasible, as argued, to call the old bonds in to a fiscal agency or an escrow agent, and cancel them concurrently with the delivery of the refunding bonds. But the bonds must be burned by the governing body of the municipality, and the legislature undoubtedly realized that bondholders could not be compelled to send their bonds in and see them burned, trusting to officials thereafter to issue other bonds to them. The legislature did not so enact, and we find nothing in the statutes indicating such intent.

Since the statute requires no public record of the cancellation, nor that the bonds be destroyed, prior to the issuance of the refunding bonds, such acts are not conditions precedent to the issuance of the bonds. The condition precedent of cancellation was

certified by the duly constituted officers of defendant, empowered to cancel and, by necessary implication, to certify thereto. In this view of the case it is unnecessary to decide whether the "records of such governing body" disclose the facts required by the statute. The refunding bonds were recorded in the Bond Registry; that record discloses that the 1920 issue had been refunded by the new issue. The bond resolution and the certificate of destruction of the bonds do not appear in the official minutes of the board; in fact, such minutes appear to be fragmentary; whether the board retained a copy of the transcript or of the bond resolution and the certificate of destruction among its records is not clear.

Two subsidiary contentions are made. It is said that, with both issues outstanding, the debt limit is exceeded. It is stipulated that the 1920 issue was valid. Refunding it does not increase the debt of the municipality. Board of Education of Town of Carmen, Okl., v. James (C. C. A. 10) 49 F.(2d) 91. Appellant's contention in this regard is expressly based upon the assumption that the statute was not followed. But defendant, by its recital and certificate, is estopped to assert its own delinquency in this respect. The other contention is that the bonds carried the seal of the Board of Education of the County instead of the School District. The purpose of the seal is to authenticate the bonds, and their authenticity is conceded. By using a seal other than its own, defendant adopted the seal used for its purpose; the bonds recite they are "sealed with its corporate seal" and defendant cannot now deny it. The statutory provision for a seal (Comp. St. N. M. 1929, § 90-1103) is directory only and not essential to a valid obligation. Draper v. Springport, 104 U. S. 501, 26 L. Ed. 812; Bernards Township v. Stebbins, 109 U. S. 341, 3 S. Ct. 252, 27 L. Ed. 956; Schmidt v. Defiance (C. C.) 117 F. 702, affirmed (C. C. A.) 123 F. 1.

Defendant selected the United States Bond Company as its escrow agent to accomplish the exchange of these bonds. It equipped its agent with fully executed negotiable bonds and a certificate of its officers which enabled its agent to put the bonds in circulation. The certificate was false, its agent untrustworthy. The District, and not an innocent person who paid value in reliance upon the possession of the bonds and the certificate, should stand the loss. Provident Life & Trust Co. v.

Mercer County, 170 U. S. 593, 18 S. Ct. 788, 42 L. Ed. 1156; Quinlan v. Green County, 205 U. S. 410, 27 S. Ct. 505, 51 L. Ed. 860; D'Esterre v. City of New York (C. C. A. 2) 104 F. 605, 610; Dillon on Munic. Corp. (5th Ed.) vol. II, § 937.

The judgment below is affirmed.